John McMullan, James Steele and Philadelphia Newspapers, Inc. *v.* Helene Wohlgemuth, Secretary of Welfare of the Commonwealth of Pennsylvania and Clarence Jenkins, Executive Director of Philadelphia County Board of Public Assistance, and the Commonwealth of Pennsylvania.

Argued April 26, 1971, before Judge WILKINSON, JR.

*David H. Marion,* with him *Harold E. Kohn,* for plaintiffs.

184

*Marx S. Leopold,* General Counsel, with him *Peter Brown,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for defendants.

*Douglas G. Dye,* with him *Jonathan M. Stein* and *Harvey N. Schmidt,* for intervenor.

OPINION BY JUDGE WILKINSON, May 17, 1971:

Plaintiffs seek injunctive relief to inspect, examine, and photocopy records of the Department of Welfare containing the names, addresses, and amounts of assistance received by welfare recipients in the City and County of Philadelphia. Plaintiffs assert their right to such information on any one or all of three grounds: (1) statutory right under the Pennsylvania Right-to-Know Law, Act of June 21, 1957, P. L. 390, §1, 65 P.S. 66.1; (2) statutory right under the Public Assistance Law, Act of June 13, 1967, P. L. 31, §425, 62 P.S. 425; (3) constitutional right of freedom of the press under the first and fourteenth amendments of the U. S. Constitution and Article I, section 7, of the Pennsylvania Constitution. They might also have argued a common law right to access to records of their government that show the payment of government funds. See Chief Justice MAXEY'S opinion in *Simon Election Case,* 353 Pa. 514, 46 A. 2d 243 (1940) ("Public records are available to the inspection of any citizens at all reasonable times.")

The defendants contend: (1) preliminary injunctive relief is not appropriate; (2) the names and addresses and amounts of assistance are not public records under the Right-to-Know Law; (3) the Public Assistance Law, by giving limited access to addresses and amounts, has by necessary inference prohibited the access to names, and by giving the Department of Welfare the right to promulgate regulations, gave statutory authority to sections 4142 and 4143 of the regulations which

prohibit access to names, addresses and amounts by plaintiffs. On these three bases, without going into the constitutional questions, defendants assert plaintiffs' rights are not sufficiently clear to warrant temporary injunctive relief.

We would agree with defendants as to the insufficiency of the clarity of the right with regard to a temporary injunction if the order were to include the right to publish names. No opinion is expressed here on the right to publish names, addresses and amounts, even if "newsworthy", until further argument is heard either on a subsequent request under the temporary injunction or on the disposition of the case on its merits.

The general law of Pennsylvania with regard to the right to inspect public records was ably set forth by Justice Benjamin R. JONES in *Wiley v. Woods*, 393 Pa. 341, 141 A. 2d 844 (1958), wherein he distinguishes between the right to notes of investigations and the right to examine the records of official actions taken by agencies or departments as a result of investigations. The case denied the right of plaintiffs to have access to the investigation notes. Everything Justice JONES states in his opinion is not only consistent with but indeed formed the polar star which served as the guide to the formation of the limited temporary injunction which denies the plaintiff access to files.

The Attorney General of Pennsylvania, following the enactment of the Right-to-Know Law, reversed a previous opinion of his office and ruled that the names and other information regarding the amounts of refunds received by taxpayers from the Board of Finance and Revenue, previously considered confidential, were made available for public inspection by the Right-to-Know Law. Attorney General's Opinion October 31, 1957, 13 D. & C. 2d 336 (1957). Most of the arguments against disclosure persuasively presented here by the able general counsel of the Department of Public Welfare would

apply equally well against the disclosure of the information in the *Wiley* case. The notable difference is that the Fiscal Code had been expressly amended to remove the cloak of confidentiality from the names and amounts of the refund. In the instant case this may have been done by the Right-to-Know Law.

Surprisingly few cases on the confidentiality of records of a similar sort in other states have been found. However, those found have uniformly held the information required to be disclosed by this Preliminary Injunction to be available. *See State v. Owens,* 28 Wis. 2d 672, 137 N.W. 2d 470 (1966) ("The fact that reputations may be damaged would not outweigh the benefit to the public interest in obtaining inspections") ; *Disabled Police Veterans' Club v. Long,* 279 S.W. 220 (Mo. 1955) ; *State v. Nix,* 155 P. 2d 987 (Okla. 1945).

The case of *Accident Index Bureau, Inc. v. Hughes,* 83 N.J. 293, 199 A. 2d 656 (1964), is particularly appropriate. In that case a business corporation advertised that it investigated the accident records and mental condition of all persons applying for employment or insurance. To this end it sought injunctive relief from the action of the Governor, his commissioner of the Department of Labor and Industry, and the head of the Division of Workmen's Compensation, denying plaintiff access to names and addresses of those to whom awards of workmen's compensation had been made. The New Jersey Right-to-Know Law in matters here involved is similar to Pennsylvania's. The New Jersey Department argued there as the Pennsylvania Department of Welfare argues here that to reveal the information requested by the plaintiff would invade the rights of recipients and would in a large measure impede and impair the fundamental program of the Department to get injured workmen back on employment. The New Jersey court, in granting injunctive relief, noted the laudable purposes of its Department of Labor

and Industry as we do the laudable purposes of our Department of Welfare to insure recipients of the maximum protection of the law. Nevertheless, these laudable purposes must give way to the paramount right of the public to examine the propriety of payments that have been made. Many recipients of public assistance assert, sometimes loudly, that they are not the objects of charity but are rather claimants for payments to which they are legally entitled. With this we agree. See *In Re Chalk*, 441 Pa. 376, 272 A. 2d 457 (1971). It would seem inappropriate to acknowledge the recipient's right to assert the validity of his claim to payments without a corresponding right of the public to acquire information that the claimant has received payments and thereby to be put in a position to contest the payment or, at the very least, to point out the specific weaknesses of the system that permits the existence of extensive abuses, if extensive abuses there be.

We hold that plaintiffs have shown sufficient apparent right to the limited relief granted to justify the order. The niceties, nuances, and limits of the rights, if any, to the general relief sought will await the disposition of the case on its merits.

The urgency of the relief sought by plaintiffs by Preliminary Injunction is highlighted by the very exhibits offered by the defendants as evidence that it is not needed. Defendants have offered, for example, Exhibit B-1 published by plaintiffs on April 19, 1971, which is an article setting forth the current investigation of the Department of Welfare by its own audit which shows that one in nine payments is erroneous. Many such other articles are attached. At this time, when the employees of the defendants are available and working on such "fresh" material and when the Department, the Governor, the Legislature, and the public

are informed and in a position to most accurately evaluate the results of such a study as is authorized by the restrictive Preliminary Injunction, the urgency of the matter is apparent to us.

The appropriateness of a permanent injunction in view of the possible remedy of appeal under the Right-to-Know Law will await final determination. Such appeal would be to this Court in substantially the same form and in all probability would result in the same order in either form of action. In any event, such restriction or limitation in form of action might apply only if this Court finds that the plaintiffs' rights are based solely on the Right-to-Know Law.

When sitting in equity, we are required to take an overlook at the whole complex problem of the rights of the plaintiffs and the public on the one hand, and the defendants and the recipients of public assistance on the other, and to balance the good that might be accomplished against the damage that might be done. In doing so, we issued a restrictive order which protects welfare recipients from having their names published and their files examined by plaintiffs and at the same time gives the plaintiffs access on a limited sampling basis to the names, addresses and amounts paid so as to check abuses, if any, in the administration of this very important part of our economy and very substantial claim on the public treasury. This order, we feel, sufficiently maintains the status quo and does equity to all parties, pending the ultimate resolution of the fundamental questions here involved.

Therefore, we have entered the following

ORDER

And now, this 4th day of May, 1971, after hearing upon Plaintiff's Motion for a Preliminary Injunction, and upon the Verified Complaint, affidavits and record herein, it is hereby

**ORDERED**

that the defendants, Helene Wohlgemuth, Clarence Jenkins and the Commonwealth of Pennsylvania, their officers, agents, servants, employees and attorneys and all persons in active concert or participation with them, be and are temporarily enjoined and restrained, during the pendency of this action and until further order or the final determination thereof:

1. From withholding from plaintiffs a list to be prepared by the defendants containing the names, addresses, and amounts of public assistance paid recipients in two percent (2%) of the cases in the City and County of Philadelphia, said list to be prepared by computer at the expense of plaintiffs which expense shall not exceed eight hundred dollars ($800.00) unless this Court and the plaintiffs are notified in advance. Said list shall be made available by the defendants to the plaintiffs on Tuesday, May 11, 1971.

2. Plaintiffs shall supply to this Court and to the defendants the names and addresses of not more than ten (10) persons who are full-time employees of the Philadelphia Inquirer who will be the only persons to have access to this list or to any of the names, addresses and amounts thereon contained. These ten persons, and only these ten persons, may investigate to determine if abuses of the public assistance program are involved in these payments. Typical abuses would be: payee being deceased; duplicate payments; fictitious children; persons departed from the state; and similar abuses.

3. During the investigation, the aforesaid ten employees shall not represent that they or any of them are employed by or are working for the Commonwealth of Pennsylvania or otherwise misrepresent their identity or purpose.

4. At the conclusion of the above investigation, plaintiffs are permitted to publish an article or articles

reporting the results but may not publish any of the names, addresses or amounts revealed as a result of this investigation without prior approval of this Court.

5. The aforesaid ten persons investigating shall not publish any of the names, addresses or amounts contained in this list under any circumstance without the prior approval of this Court. Each of the aforesaid ten persons shall sign a receipt that he or she has been given a copy of this Order, has read the same, and is subject to the processes of the law if he or she violates this Order. The signed receipts shall be delivered to this Court with the list of the names.

6. Plaintiffs shall supply a surety bond in the amount of five thousand dollars ($5,000.00) for the faithful compliance with this Order.

7. Any party to this proceeding may petition this Court to modify this Order during the pendency of this action and prior to final determination.