Grafton,
No. 6325.

PHILIP W. MANS *v.* LEBANON SCHOOL BOARD & *a.*

April 28, 1972.

*Perkins & Douglas* (*Mr. Charles G. Douglas III* orally) for the plaintiff.

*Stebbins & Bradley* (*Mr. David H. Bradley* orally) for the defendants.

*McLane, Carleton, Graf, Greene & Brown* and *Jack B. Middleton* (*Mr. Middleton* orally) for New Hampshire Education Association, amicus curiae.

*Nighswander, Lord, Martin & KillKelley* and *Bradley F. Kidder* (*Mr. Kidder* by brief) for New Hampshire School Board Association, amicus curiae.

*Warren B. Rudman,* attorney general, and *Richard A. Hampe,* assistant attorney general (*Mr. Hampe* orally), for the State, amicus curiae.

KENISON, C.J. The issue presented in this case is whether RSA ch. 91-A(supp.), popularly referred to as the right-to-know law (*Herron* v. *Northwood,* 111 N.H. 324, 282 A.2d 661 (1971)), entitles plaintiff, a resident taxpayer of Lebanon, to access to the name and salary of each schoolteacher in Lebanon School District. The Lebanon School Board publishes the name of each teacher and the general salary schedule for all teachers, but refuses to disclose individual salaries by name. The published information allows plaintiff to calculate the approximate salary of each; however, plaintiff claims the law entitles him to the salary information without conjecture or approximation.

After a full hearing on the merits, the Superior Court (*King,* J.), held plaintiff was entitled to the information, because it believed New Hampshire traditionally favored public disclosure over individual sensitivity. The defendants' exceptions were reserved and transferred to this court.

The information plaintiff seeks is part of each teacher's contract with the school board. The issue is therefore governed by RSA 91-A:4(supp.) and 5(supp.), Laws 1967, 251:1, permitting freedom of access to public records, which provides: "91-A:4 Minutes and Records Available for Public Inspection. Every citizen during the regular or business hours of all such bodies or agencies, and on the regular business premises of such bodies or agencies, has the right to inspect all public records, . . . except as otherwise prohibited by statute or section 5 of this chapter.

"91-A:5(supp.) Exemptions. The records of the following bodies are exempted from the provisions of this chapter: . . . III. Personal school records of pupils. IV. Records pertaining to internal personnel practices, confidential, commercial, or financial information, personnel, medical, welfare, and other files whose disclosure would constitute invasion of privacy." The legislature gave this statute particularly careful study. Remarks of Senator Bennett, Senate Journal for 1957, at 119. *See* Senate Journals for 1957, at 107-08; and 1959, at 177-78, 196-202; House Journal for 1963, at 476-78.

The teachers' contracts are public records under section 4, the issue being whether they are exempt under section 5, subsection IV. Subsection IV means that financial information and personnel files and other information necessary to an individual's privacy need not be disclosed. Construed broadly, and without reference to the objectives of the right-to-know law, these provisions would exclude teachers' contracts from disclosure. But such an expansive construction allows the exemption to swallow the rule and is inconsistent with the purposes and objectives of the right-to-know law. RSA ch. 91-A(supp.); *see Herron* v. *Northwood,* 111 N.H. 324, 282 A.2d 661 (1971). Additionally, such an expansive construction would justify the criticism that our act, although promising, is "weak and easily evaded." Emerson, The System of Freedom of Expression 672 (1970). In determining whether salaries are exempt as financial information or as private information the benefits of disclosure to the public are to be balanced against the benefits of nondisclosure to the administration of the school system and to the teachers. *See* 5 McQuillin, Municipal Corporations *s.* 14.14 (3d ed. 1969 rev. vol.); Davis, Administrative Law Treatise *s.* 3A.22 (supp. 1970). The provisions of section 3(supp.) do not clearly provide for withholding from public knowledge decisions finally embodied in records made public under sections 4(supp.) and 5(supp.), even though such records result from deliberations conducted in executive sessions as permitted by section 3(supp.).

One consideration not relevant to our inquiry is the plaintiff's lack of a sufficient personal reason for seeking the information. At common law a court might deny access to information if it thought plaintiff's reasons whimsical or antisocial. *MacEwan* v. *Holm,* 226 Ore. 27, 35, 359 P.2d 413, 417 (1961); *State* v. *Harrison,* 130 W. Va. 246, 43 S.E.2d 214 (1947); *Nowack* v. *Fuller,* 243 Mich. 200, 219 N.W. 749 (1928). Our statute grants rights to "every citizen." RSA 91-A:4(supp.). Plaintiff's rights under section 4 do not depend upon his demonstrating a need for the information.

The exemption provisions of our right-to-know law, RSA 91-A:5(IV)(supp.), are similar to the Federal Freedom of Information Act, 5 U.S.C.A. *s.* 552(b)(2), (4) and (6). There

appears to be general agreement that the Federal Freedom of Information Act should be resolved "with a view to providing the utmost information," also "[t]he exemptions authorizing nondisclosure should be interpreted restrictively." *Recommendation No. 24 of the Administrative Conf. of the United States — Principles and Guidelines for Implementation of the Freedom of Information Act,* in Administrative Conf. of the United States, Report 1970-1971, at 51-52 (1971). *See also* Gianella, Agency Procedures Implementing the Freedom of Information Act: A Proposal for Uniform Regulations, 23 Ad. L. Rev. 217, 265 (1971).

There is no doubt that teachers and the teaching profession have a sincere conviction that public access to their individual salaries would be embarrassing to them and not in the best interest of the efficient management of school affairs. However it should be noted that for many years in this State salaries of public officials and employees, State and municipal, have been commonly published by statute (RSA ch. 94, Laws 1972, 60:46), or made available to the public or disclosed voluntarily without significant damage to individual dignity or the efficient management of the State system. Since 1951 certain county and municipal officers have been required to report the income and expenses of their office. RSA 30:5, 5-a, 6. At least since 1886 the city of Nashua has published the name and individual salary of its teachers. *See* 118th Annual Report of the City of Nashua, New Hampshire for the Year 1970, at 230-46. Approximately one-third of the school districts in the State have published or made available to the public the individual salaries of the teachers in their respective communities. While the actions of these school districts are not a definitive construction of our State laws, they do indicate that the educational climate is not hostile to the public's right-to-know where and how their tax dollars are spent.

*Sanchez* v. *Board of Regents,* 82 N.M. 672, 486 P.2d 608 (1971), held that under New Mexico's right-to-know law there was no right to access to proposed teachers' contracts, but said there "obviously" would be access to completed contracts. *Board of School Directors* v. *Wisconsin Employment Relations Comm'n,* 42 Wis. 2d 637, 168 N.W.2d 92 (1969), recognized

that the Wisconsin right-to-know law gave the general public access to names, addresses, and salaries of all municipal employees including teachers. *See Deputy Sheriffs Mut. Aid Ass'n* v. *Salt Lake County Deputy Sheriffs Merit System Comm'n,* 24 Utah 2d 110, 466 P.2d 836 (1970) (statute grants public access to merit ratings of sheriffs). *See also,* Cross, The People's Right to Know, 3-13, 65 (1953).

The argument can be made that the plaintiff or any other taxpayer can obtain all the information he needs as a voter and taxpayer from the general salary schedules. If this is true, the fact still remains that the voters of a school district are the final appropriating authority and the appropriations for school purposes must be made by them. *Laconia Board of Education* v. *Laconia,* 111 N.H. 389, 285 A.2d 793 (1971). The legislature has determined that that authority is best exercised by a full disclosure of the mode and manner of public expenditures for school purposes.

The salaries of public employees and schoolteachers are not "intimate details . . . the disclosure of which might harm the individual". H.R. Rep. No. 1497 at 11, 89th Cong. 2d Sess. (1966) (discussing the Federal Freedom of Information Act which is similar to our statute; compare RSA 91-A:5(IV)(supp.) to 5 U.S.C.A. s. 552(b)(2), (4) and (6)). We conclude that it was the determination of the legislature that disclosure of salaries of schoolteachers is not a disclosure of those intimate details which "would constitute invasion of privacy." RSA 91-A:5(IV)(supp.); *see Griswold* v. *Connecticut,* 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965) (the constitutional right to privacy); *Hamberger* v. *Eastman,* 106 N.H. 107, 206 A.2d 239 (1964).

*Defendants' exceptions overruled.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., *dissenting:* The legislature in my view has indicated, not only in section 5 but also in section 3, that it intended to exempt the compensation of public employees from the disclosure provisions of RSA ch. 91-A(supp.). In 1969 section 3 was amended, not to provide greater dis-

closure, but to provide exemptions from disclosure for records of actions when "divulgence of information would be likely to affect adversely the reputation of any person" and when the action involves the "compensation of any public employee".

Section 5 exempts "files whose disclosure would constitute invasion of privacy." It would certainly be an invasion of privacy to publish the salary of a person not a public employee. There is nothing to indicate that the exemption in section 5 was intended to extend only a limited right of privacy to public employees. In this respect our act significantly differs from the federal act, which exempts only a *clearly unwarranted* invasion of privacy. Davis, Administrative Law Treatise 3A.22 (supp. 1970). Our act also differs from any of the acts construed in the State cases cited by the court none of which exempt records of compensation or mention the right of privacy.

When sections 3 and 5 are read together it seems clear to me that it was intended that public employees were to be protected against the indiscriminate disclosure and publication of their compensation and thus to preserve their "right of privacy". *Cf. City of Carmel by the Sea* v. *Young*, 2 Cal. 3d 259, 466 P.2d 225, 85 Cal. Rptr. 1 (1970); *Brents* v. *Morgan*, 221 Ky. 765, 299 S.W. 967 (1927).

Granting that section 4 should be construed in favor of disclosure, I see no reason for giving such preference where we are construing an exception protecting a fundamental personal right. That some may boast of their income and some may have theirs revealed by statute does not lessen the embarrassment to these teachers of disclosing theirs. Where personal privacy is involved I believe the initial question must be whether there is any reason for this court to order disclosure. Because the school board has already made available substantial salary information, sufficient for all legitimate public purposes, there is no reason for requiring disclosure in this case. *Cf. McMullan* v. *Wohlgemuth*, 2 Pa. Commw. 183, 282 A.2d 741 (Pa. Commw. 1971); *Grumman Aircraft Engineering Corp.* v. *Renegotiation Board*, 425 F.2d 578 (D.C. Cir. 1970).

Modern society, as it diminishes personal privacy, makes

that remaining ever more valuable. *See* Miller, The Assault on Privacy (1971); Symposium on Privacy, 31 Law & Contemp. Prob. 251 (1966). I believe the legislature appreciates this trend and in RSA 91-A:3(supp.) and 5(supp.) intended to deny the public the right to know personal information, such as a person's income, where the public has no need to know.