Merrimack
No. 2009-215

PROFESSIONAL FIREFIGHTERS OF NEW HAMPSHIRE

v.

LOCAL GOVERNMENT CENTER, INC. & a.

Argued: October 8, 2009
Opinion Issued: January 29, 2010

700

*Molan, Milner & Krupski, PLLC*, of Concord (*Glenn R. Milner* on the memorandum of law and orally), for the petitioner.

*Hinckley, Allen & Snyder LLP*, of Concord (*Christopher H.M. Carter* and *Kevin E. Verge* on the brief, and *Mr. Carter* orally), for the respondents.

BRODERICK, C.J. The respondents, Local Government Center, Inc. (LGC) and its subsidiaries, appeal an order of the Superior Court (*Mangones*, J.) granting summary judgment in favor of the petitioner, Professional Firefighters of New Hampshire (Professional Firefighters), and ruling that: (1) two of LGC's subsidiaries are subject to the Right-to-Know Law, RSA ch. 91-A (2001 & Supp. 2009); (2) certain salary information for LGC employees is subject to disclosure; and (3) Professional Firefighters is entitled to attorney's fees incurred in securing the requested salary information through litigation. We affirm in part, vacate in part and remand.

I

This is the second time these parties have been before us. *See Prof'l Firefighters of N.H. v. HealthTrust*, 151 N.H. 501 (2004). In reciting the facts related to the present dispute, we rely upon the trial court's order granting summary judgment and the undisputed facts in the record before us.

In 1941, the New Hampshire Municipal Association was formed to provide legal, legislative advocacy, and other services to its members, which are comprised of political subdivisions. Its self-defined purpose is "[t]o promote good municipal government and thereby promote the growth and prosperity of cities, towns and villages." The Association later was renamed the LGC. Currently, LGC is a single organization that owns and manages the following subsidiaries: New Hampshire Municipal Association, LLC (NHMA); Local Government Center HealthTrust, LLC (LGC Health-Trust); Local Government Center Real Estate, Inc. (LGC Real Estate); Local Government Center Property-Liability Trust, LLC (LGC Property-Liability); and Local Government Center Workers Compensation Trust, LLC, which merged into LGC Property-Liability. LGC bylaws indicate that LGC manages its subsidiaries through a single board of directors comprised of municipal public officials, school public officials, employee officials and a county public official.

The subsidiaries perform different functions. NHMA provides lobbying and training services to municipalities. NHMA's purpose, as stated on its "CERTIFICATE OF FORMATION" filed with the Secretary of State, is "[t]o strengthen the quality of municipal government through provision of information, policy development and cooperation with the State of New

Hampshire, the Legislature and other agencies." LGC HealthTrust and LGC Property-Liability operate pooled risk management programs under RSA chapter 5-B. Participation in these programs requires: (1) status as a municipality; (2) membership in LGC; (3) a contractual agreement with either LGC HealthTrust or LGC Property-Liability; and (4) contractual participation with NHMA. With respect to LGC Real Estate, the trial court noted that "[p]articipating municipalities in LGC have no direct membership or contractual relationship with LGC Real Estate, which is said to 'merely provide[] real estate ownership and management to LGC, with no direct benefit or service provided to any municipalities or school districts.' "

In 2003, Professional Firefighters filed a Right-to-Know petition against LGC HealthTrust, seeking meeting minutes of its board of trustees and subcommittees, as well as a contract between it and Anthem Blue Cross & Blue Shield. The trial court granted the request, and LGC HealthTrust appealed. We held that LGC HealthTrust is a quasi-public entity subject to the Right-to-Know Law. *See id.* at 504-05. We remanded the case, directing the trial court to either conduct an *in camera* review or have LGC HealthTrust provide a *Vaughn* index to determine what information in the minutes and the contract should be exempt from disclosure. *See id.* at 507.

Subsequently, Professional Firefighters requested other documents from LGC and its subsidiaries, including salary and benefit information for LGC employees. LGC complied with certain requests, offered to negotiate disclosure terms for other documents, but declined to provide the salary and benefit records on the basis that they are internal personnel records under RSA 91-A:5, IV, and that no public interest would be served by disclosing them.

In March 2007, Professional Firefighters filed a petition under RSA chapter 91-A, seeking the withheld documents and an award of attorney's fees and costs related to the litigation. In response, LGC sent a letter to Professional Firefighters, which, without revealing individual salary figures, disclosed that in a particular year it had made salary payments totaling $6,120,946.68 to approximately 112 full-time employees. Professional Firefighters filed a motion for summary judgment, which the trial court granted, ruling that all LGC subsidiaries, including NHMA and LGC Real Estate, are subject to the Right-to-Know Law, and that LGC is required to disclose the specific salary information of its employees. It also ordered LGC to pay attorney's fees to Professional Firefighters for refusing to produce the salary information.

On appeal, we review the trial court's grant of summary judgment by considering the affidavits and other evidence in the light most favorable to the non-moving party. *Smith v. HCA Health Servs. of N.H.*, 159 N.H. 158, 160 (2009). If this review does not reveal any genuine issues of material fact,

*i.e.*, facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, we will affirm. *Id.* We review the trial court's application of law to fact *de novo. Id.*

Resolution of this case requires us to interpret the Right-to-Know Law, RSA ch. 91-A, which is a question of law that we review *de novo. ATV Watch v. N.H. Dep't of Resources & Econ. Dev.*, 155 N.H. 434, 437 (2007).

> When interpreting a statute, we first look to the plain meaning of the words used and will consider legislative history only if the statutory language is ambiguous. We resolve questions regarding the Right-to-Know law with a view to providing the utmost information in order to best effectuate the statutory and constitutional objective of facilitating access to all public documents.

*Id.* (quotations, brackets, ellipsis, and citation omitted).

## II

We first address LGC's argument that the trial court erred in ruling that two of its subsidiaries, NHMA and LGC Real Estate, are subject to the Right-to-Know Law. LGC argues that because NHMA and LGC Real Estate are not staffed by public employees, do not manage money collected by governmental entities and do not perform an essential governmental function, they are not subject to the Right-to-Know Law. It particularly emphasizes that the subsidiaries do not perform essential governmental functions as, LGC contends, is required under our holding in *Prof'l Firefighters of N.H.* in order for an entity to be subject to the Right-to-Know Law.

Part I, Article 8 of the New Hampshire Constitution provides that "the public's right of access to governmental proceedings and records shall not be unreasonably restricted." This right is embodied within the Right-to-Know Law, which was enacted "to ensure . . . the greatest possible public access to the actions, discussions and records of all public bodies." RSA 91-A:1. Indeed, as the statute's preamble recognizes, "[o]penness in the conduct of public business is essential to a democratic society." *Id.* Thus, the Law provides that "[e]very citizen . . . has the right to inspect all governmental records in the possession, custody, or control of [all] public bodies or agencies." RSA 91-A:4, I.

Some entities are "not easily characterized as solely private or entirely public," *Union Leader Corp. v. N.H. Housing Fin. Auth.*, 142 N.H. 540, 547 (1997), and "[n]ot all organizations that work for or with the government are subject to the right-to-know law," *Bradbury v. Shaw*, 116

N.H. 388, 389 (1976). However, an entity that has a distinct legal existence separate from the State and that functions independently from the State may nevertheless be subject to the Right-to-Know Law depending upon its structure and function. *See, e.g., Bradbury,* 116 N.H. at 389-90; *Union Leader Corp.,* 142 N.H. at 547; *Prof'l Firefighters of N.H.,* 151 N.H. at 504.

We have reviewed whether entities that work for or with the government are subject to the Right-to-Know Law on at least three occasions. In *Bradbury,* we considered the status of an industrial advisory committee formed by the mayor of Rochester. *Bradbury,* 116 N.H. at 389. We examined its composition (which included "newspapermen and members of the city council"), the frequency of its meetings (once per month), and its functions (which included reviewing land purchases the city had made, identifying city-owned property to possibly sell, arranging sale transactions and participating in land sale negotiations, discussing extension of city water and sewer lines and construction of new streets). *See id.* Ultimately, we concluded that the committee's involvement in governmental programs and decisions brought it within the scope of the Right-to-Know Law. *Id.* at 390.

In *Union Leader,* we considered the status of the New Hampshire Housing Finance Authority, a statutorily created entity charged with providing safe and affordable housing to the elderly and low income residents of New Hampshire. *Union Leader Corp.,* 142 N.H. at 547. In so doing, we examined its structure and function as outlined in the statutory scheme under which it originated, RSA chapter 204-C, and determined that it (1) encouraged "the investment of private capital . . . through the use of public financing," (2) was a public instrumentality, (3) performed public and essential governmental functions of the State, and (4) was empowered to work with other state and federal agencies. *See id.* Accordingly, we concluded that despite its distinct legal existence separate from the State, the Authority was subject to the Right-to-Know Law. *Id.*

In *Prof'l Firefighters of N.H.,* we considered the status of LGC HealthTrust, a nonprofit corporation formed by an association of governmental entities to provide general health insurance benefits for public employees under a pooled risk management program. *Prof'l Firefighters of N.H.,* 151 N.H. at 502. We examined the entity's structure and function as delineated by RSA chapter 5-B. *Id.* at 504. In particular, we noted that LGC HealthTrust (1) was comprised exclusively of political subdivisions, which are subject to the Right-to-Know Law, (2) was governed entirely by public officials and employees, (3) provided health insurance benefits for public employees through a pooled risk management program, an activity that the legislature recognized as an essential governmental function, (4) operated for the sole benefit of its constituent governmental entities and for

public employees, and (5) managed money collected from governmental entities while enjoying the tax exempt status of public entities. *Id.* In the end, we concluded that LGC HealthTrust was subject to the Right-to-Know Law because it "performs the essential governmental function of providing insurance and pooled risk management programs to political subdivisions." *Id.* at 504-05.

■ Our ultimate goal in construing the Right-to-Know Law is to further the statutory and constitutional objectives of increasing public access to all public documents and governmental proceedings, *see id.* at 504, and to "provide the utmost information to the public about what its government is up to," *Goode v. N.H. Legislative Budget Assistant,* 148 N.H. 551, 555 (2002) (quotation omitted). Whether an entity performs an essential governmental function is not the exclusive method for determining whether it is subject to the Right-to-Know Law. Indeed, we have emphasized that:

> Any general definition can be of only limited utility to a court confronted with one of the myriad organizational arrangements for getting the business of government done. The unavoidable fact is that each new arrangement must be examined anew and in its own context.

*Bradbury,* 116 N.H. at 390 (quotation, brackets and ellipsis omitted). In the end, we examine the structure and function of an entity to assess the entity's relationship with government, and determine whether that entity is conducting the public's business. *See* RSA 91-A:1 (purpose of Right-to-Know Law is to facilitate openness in the conduct of public business).

We examine the summary judgment record to determine the structure and function of NHMA and LGC Real Estate. According to the LGC bylaws, all of LGC's affiliated entities, including NHMA and LGC Real Estate, are part of an organization solely owned by LGC and managed by a single board of directors, consisting of municipal public officials, school public officials, employee officials, and a county public official. The LGC bylaws state that the board of directors shall "set policy, oversee and administer LGC" and its subsidiaries, including "NHMA ... and LGC Real Estate." Further, the bylaws provide that a single executive director is in charge of "the daily activities of LGC, including all of its subsidiar[ies]." LGC concedes that it, itself, is a governmental entity that is subject to the Right-to-Know Law.

■ In response to interrogatories, LGC admitted that its participants consist of public government members and other entities that perform functions that would otherwise have to be performed by a governmental entity. We acknowledge that NHMA and LGC Real Estate perform

different functions for LGC, and such functions arguably could be performed by a private entity. However, LGC admitted in its pleadings in the superior court that it "assists members in performing essential governmental functions." Furthermore, NHMA and LGC Real Estate, in the performance of their respective functions, are directly managed by, owned by and operate for the sole benefit of LGC, which has a conceded status as a governmental entity whose members consist solely of political subdivisions and which is managed solely by municipal, school, employee and county officials. This is not a circumstance in which a public body or public agency is contracting with an otherwise private entity with a separate legal existence from that public body or public agency in order to accomplish certain tasks. Cf. *News and Sun-Sentinel v. Schwab, et al.*, 596 So. 2d 1029, 1031-32 (Fla. 1992) (private architectural corporation retained by county to provide professional services for construction of public school was not subject to state public records act because it was not an entity acting on behalf of a public agency). Finally, their answers to interrogatories indicate that both NHMA and LGC Real Estate enjoy the tax exempt status of public or governmental entities under the federal Internal Revenue Code, 26 U.S.C. § 115. Therefore, we conclude that the structure and function of NHMA and LGC Real Estate in their relationship with LGC, which has a conceded status as a governmental entity subject to the Right-to-Know Law, demonstrate that they are conducting the public's business. Accordingly, we affirm the trial court's decision that NHMA and LGC Real Estate are subject to the Right-to-Know Law.

### III

Next, LGC argues that the trial court erred in ordering it to disclose records that identify the names and individual salaries of its private employees. LGC disclosed general salary information to Professional Firefighters by providing its total number of full-time employees, as well as the total salary paid to them. However, it refused to disclose the individual salaries of its employees by name. LGC contends that these specific records are exempt from public disclosure under RSA 91-A:5, IV as "confidential, commercial, or financial information" whose disclosure would "constitute an invasion of privacy." According to LGC, its "private employees have a higher expectation of privacy [regarding their salary information] than those who choose to work in the public sector," and their privacy interests far outweigh any public interest in the production of this information.

■ We reject LGC's argument that because its employees are "private" by nature, their salary records are entitled to a greater degree of privacy protection under the Right-to-Know Law than are public employees' records. Whether records are subject to public disclosure depends upon

whether the entity itself is subject to the Right-to-Know Law. *See* RSA 91-A:4, I (citizens have the "right to inspect all governmental records in the possession, custody, or control of [all] public bodies or agencies"). LGC admits that it is a governmental entity that is subject to the Right-to-Know Law. Further, it does not argue that the salary records are not "governmental records." *See id.* Therefore, LGC's employee salary records are subject to public disclosure unless an exception or exemption applies.

The Right-to-Know Law does not guarantee the public an unfettered right of access to all governmental workings, as evidenced by the statutory exceptions and exemptions. *See Goode*, 148 N.H. at 553. However, "[w]hen a public entity seeks to avoid disclosure of material under the Right-to-Know Law, that entity bears a heavy burden to shift the balance toward nondisclosure." *Lambert v. Belknap County Convention*, 157 N.H. 375, 379 (2008). "We resolve questions regarding the [Right-to-Know Law] with a view to providing the utmost information in order to best effectuate the statutory and constitutional objective of facilitating access to all public documents." *Goode*, 148 N.H. at 554 (quotation omitted). "Thus, we construe provisions favoring disclosure broadly, while construing exemptions narrowly." *Id.*

LGC contends that the specific names and salary information of its employees are exempt under RSA 91-A:5, IV, as records pertaining to "confidential, commercial, or financial information." Under this statute, we must analyze "both whether the information sought is confidential, commercial, or financial information, and whether disclosure would constitute an invasion of privacy." *Union Leader Corp.*, 142 N.H. at 552 (quotation and emphasis omitted). When considering whether disclosure of public records constitutes an invasion of privacy under RSA 91-A:5, IV, we engage in a three-step analysis. *See Lambert*, 157 N.H. at 382-83. First, we evaluate whether there is a privacy interest at stake that would be invaded by the disclosure. *Id.* at 382; *see also Union Leader Corp.*, 142 N.H. at 553 (court examines whether the asserted private confidential, commercial, or financial interest "is sufficiently private [such] that it must be balanced against the public's interest in disclosure"). Second, we assess the public's interest in disclosure. *See Lambert*, 157 N.H. at 383. Third, we balance the public interest in disclosure against the government's interest in nondisclosure and the individual's privacy interest in nondisclosure. *Id.* If no privacy interest is at stake, then the Right-to-Know Law mandates disclosure. *Id.* Further, "[w]hether information is exempt from disclosure because it is private is judged by an objective standard and not a party's subjective expectations." *Id.* at 382-83.

In ruling that LGC must disclose the specific salary information sought, the trial court followed our decision in *Mans v. Lebanon School Board*, 112 N.H. 160 (1972), and ruled that LGC employees "are entitled to no greater privacy interest in their salaries than are public employees." We agree. We need not specifically address whether the records are "confidential, commercial, or financial information," because we follow *Mans* and conclude that disclosure of the records would not constitute an invasion of privacy.

In *Mans*, we considered whether the individual salary information for public school teachers was shielded from disclosure pursuant to the exemption at issue here. *Id.* at 161. While the school district was willing to publish the name of each teacher and a general salary schedule, a resident taxpayer sought disclosure of individual salaries by name. *Id.* We reviewed whether the specific salary information was private in nature and exempt from disclosure under RSA 91-A:5. *Id.* at 162-64. In so doing, we particularly examined the harm that the school system claimed that the individual employees would incur in the event of public disclosure, *id.* at 163, and the public's need for access, *id.* at 164.

 With respect to harm, we noted that salaries of public officials and employees, both state and municipal, had been commonly published in different venues "without significant damage to individual dignity or the efficient management of the State system." *Id.* at 163. Regarding public need, we noted that the records were pertinent to the mode and manner of public expenditures for school purposes and, thus, concluded that the Right-to-Know Law favored public scrutiny in order to enable resident voters to properly exercise their final appropriating authority. *See id.* at 164. We held that "[t]he salaries of public employees and schoolteachers are not intimate details the disclosure of which might harm the individual," and, thus, concluded that disclosure would not constitute an invasion of privacy barring public disclosure under RSA 91-A:5, IV. *Id.* (quotation and ellipsis omitted). We acknowledged that salary information generally constitutes private information and would be subject to the exemption at issue if we were to construe that exemption broadly. *Id.* at 162. Ultimately, however, we rejected a broad construction that would have allowed the exemption to swallow the rule and would have contravened the purposes and objectives of the Right-to-Know Law. *See id.*

 Following *Mans*, we agree with the trial court that LGC employees have no greater privacy interest regarding their individual salary information than traditional public employees. While such records apparently may not have been historically disclosed to the public as were those of certain public school teachers in *Mans*, LGC offers no reason why public disclosure of its employees' salary records would cause any significant damage to

individual dignity or the efficient management of its operation. *See id.* at 163. Its bald assertion that "LGC's private employees have a higher expectation of privacy than those who choose to work in the public sector" is not persuasive. Although LGC employees may not have expected their salary information to be disclosed, their subjective expectations are not dispositive. *See Lambert,* 157 N.H. at 382-83 (whether information is private is judged by an objective standard and not a party's subjective expectations); *Mans,* 112 N.H. at 163 (sincere conviction of teachers that public access to individual salaries would be embarrassing to them and not in the best interest of the efficient management of school affairs was not dispositive).

Further, the nature of the records is pertinent to the manner in which LGC operates. LGC has a conceded status as a governmental entity subject to the Right-to-Know Law and is subsidized by money generated through tax collection. It is not disputed that other than revenues generated from incidental services, such as the sale of LGC handbooks and directories, the bulk of LGC's income comes from member dues paid by participating municipalities with taxpayer money. This income is used to operate LGC, including paying the salaries of LGC employees. Additionally, the LGC bylaws indicate that LGC members, which are mostly municipalities, are entitled to participate in the return of net income, and in the event LGC dissolves, any remaining assets will be liquidated and the proceeds distributed to LGC members. Moreover, the LGC board of directors are entitled to pay themselves "reasonable compensation for services as Directors and reimburse themselves for reasonable expenses properly and actually incurred in the course of acting as Directors."

Public access to specific salary information gives direct insight into the operations of the public body by enabling scrutiny of the wages paid for particular job titles. Public scrutiny can expose corruption, incompetence, inefficiency, prejudice and favoritism. *See International Federation v. Superior Court,* 165 P.3d 488, 495 (Cal. 2007). Such scrutiny is necessary for the public to assess whether LGC, which has a conceded status as a governmental entity subject to the Right-to-Know Law, is being properly and efficiently managed and for educating the member municipalities regarding whether continued membership would be a wise expenditure of taxpayer money. In short, knowing how a public body is spending taxpayer money in conducting public business is essential to the transparency of government, the very purpose underlying the Right-to-Know Law.

We are unpersuaded by the cases LGC cites in its effort to shield the specific salary information of its employees. Decided under the federal Freedom of Information Act, the cases largely turn on granting protection to records involving individual employee names and personal addresses,

which if publicly disclosed, would expose the individual employees to intrusion into the privacy of their homes. *See, e.g., Department of Defense v. FLRA,* 510 U.S. 487, 501-02 (1994) (disclosure of home addresses of federal agency employees would constitute an unwarranted intrusion into privacy of the home); *Sheet Metal Workers v. Dept. of Veterans Affairs,* 135 F.3d 891, 904-05 (3d Cir. 1998) (disclosure of names and home addresses of governmental contract employees constitutes an unwarranted invasion of personal privacy). Our decision today is consistent with our own precedent, *see Mans,* 112 N.H. at 164, as well as that of other jurisdictions, *see, e.g., International Federation,* 165 P.3d at 495 n.5.

We conclude that LGC has failed to establish that the salaries of its individual employees comprise intimate details that are exempt from disclosure under RSA 91-A:5, IV. *See Mans,* 112 N.H. at 164. Accordingly, we affirm the trial court's grant of Professional Firefighters' request for disclosure of LGC employee names and individual salary information.

## IV

Finally, LGC challenges the trial court's award of attorney's fees to Professional Firefighters. According to LGC, the trial court erred in concluding that LGC knew or should have known that it was required to produce the salary information of its employees because the trial court failed to consider the merits of withholding the information pursuant to the exemption under RSA 91-A:5, IV.

Under RSA 91-A:8, attorney's fees shall be awarded if the trial court finds that: (1) "such lawsuit was necessary in order to make the information available"; and (2) "the public body, public agency, or person knew or should have known that the conduct engaged in was a violation of [RSA chapter 91-A]." We will defer to the trial court's findings of fact unless they are unsupported by the evidence or erroneous as a matter of law. *Prof'l Firefighters of N.H.,* 151 N.H. at 507.

LGC argues that it reasonably believed that RSA 91-A:5, IV shielded such records from public disclosure, and, thus, it withheld the salary information. According to LGC, the trial court's award of attorney's fees was based upon its mistaken assumption that LGC withheld the information because it did not believe that all of the LGC entities were subject to RSA chapter 91-A. We agree.

The trial court found that:

[W]hile LGC had a not unreasonable argument as to why some of the respondent entities may have been exempt from the Right-to-Know Law, LGC had refused to produce salary information for

all of its subsidiaries, including those it knew, or should have known, were subject to the Right-to-Know Law. Therefore, the Court considers the petitioner to be the prevailing party in this Right-to-Know matter. Accordingly, the petitioner's request for attorney's fees and costs with regard to the procurement of salary information is granted.

Earlier in its order, however, the trial court identified the reason LGC withheld the specific salary information as the claimed exemption under RSA 91-A:5, IV. Thus, the trial court based its award of attorney's fees upon a mistaken understanding of LGC's reason for withholding the requested salary information. In its motion for reconsideration, LGC reiterated that it had withheld the salary information due to its belief that such records were exempt under RSA 91-A:5, IV and that such belief was reasonable. The trial court did not address this issue in its order denying the motion for reconsideration. Given the circumstances of this case, we conclude that the award of fees was based upon a mistaken premise which the trial court failed to correct when it had the opportunity to do so in light of LGC's motion for reconsideration. Accordingly, we vacate the award of attorney's fees and remand.

*Affirmed in part; vacated in part; and remanded.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.