Hillsborough-northern judicial district
No. 2010-784

## UNION LEADER CORPORATION

v.

## NEW HAMPSHIRE RETIREMENT SYSTEM

Argued: June 16, 2011
Opinion Issued: November 3, 2011

*Malloy & Sullivan, P.C.*, of Manchester (*Kathleen C. Sullivan* on the brief and orally), for the plaintiff.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Edward M. Kaplan* and *Sarah S. Murdough* on the brief, and *Mr. Kaplan* orally), for the defendant.

*Orr & Reno, P.A.*, of Concord (*William L. Chapman* on the brief), for New England First Amendment Coalition, as *amicus curiae*.

HICKS, J. The defendant, New Hampshire Retirement System (NHRS), appeals a decision of the Superior Court (*Garfunkel*, J.) ordering it to disclose certain records related to retiree benefits requested by the plaintiff, Union Leader Corporation (Union Leader), under New Hampshire's Right-to-Know Law, RSA chapter 91-A (2001 & Supp. 2010). We affirm.

The following facts were found by the trial court, are supported in the record, or are established as a matter of law. "NHRS is a defined benefit pension trust for state and political subdivision employees." *Bd. of Trustees, N.H. Judicial Ret. Plan v. Sec'y of State*, 161 N.H. 49, 50 (2010); *see* RSA 100-A:2 (2001), :3 (Supp. 2010) (amended 2011). "It is funded exclusively through member and employer contributions and investment income." *Bd. of Trustees, N.H. Judicial Ret. Plan*, 161 N.H. at 50; *see* RSA 100-A:16 (Supp. 2010) (amended 2011). NHRS members meeting certain creditable service and other requirements, *see* RSA 100-A:5 (2001) (amended 2011), :6 (Supp. 2010) (amended 2011), become entitled, at retirement, to "receive a defined lifetime 'retirement allowance,' consisting of 'the sum of the member annuity and the state annuity.'" *Petition of Concord Teachers*, 158 N.H. 529, 530-31 (2009) (citation omitted) (quoting RSA 100-A:5, :1, XXII (2001)); *see* RSA 100-A:1, XX, XXI (2001) (defining "Member annuity" and "State annuity").

Union Leader describes itself as "a publisher of newspapers of general circulation, and other media, throughout the state of New Hampshire, and elsewhere." In February 2010, a Union Leader reporter requested, under the Right-to-Know Law, that NHRS provide "[a] list of names of the 500 state retirement system members who received the highest annual pension payments from Jan. 1 to Dec. 31, 2009. Also include the amount each of these top 500 pension earners received that year." The reporter stated that she made the "request as a reporter for the New Hampshire Union Leader newspaper for an article I will write on the state retirement system."

NHRS denied the request, but offered to provide a list, updated as of December 2009, of all state "annuities ranked from highest to lowest by amount of their annual benefit." The list would "identif[y] the annuity type, member category (police, fire, teacher, employee), and whether the annuitant's last employer was either the State of NH or a political subdivision." Union Leader thereafter filed a petition with the trial court under the Right-to-Know Law for access to the information it had requested.

The trial court granted the petition, finding that the information was "subject to mandatory disclosure" under RSA 91-A:4, I-a (Supp. 2010), and was not exempt as a "file[] whose disclosure would constitute invasion of privacy." RSA 91-A:5, IV (Supp. 2010). This appeal followed.

On appeal, NHRS argues that the trial court erred in: (1) concluding that the plain language of RSA 91-A:4, I-a required disclosure of the requested records; (2) finding RSA 91-A:4, I-a unambiguous and therefore failing to consult legislative history; (3) failing to recognize the privacy interest at stake in disclosing retirees' names and annuity amounts; and (4) failing to assess the public's interest in disclosure and balance it against NHRS's interest in nondisclosure and the retirees' privacy interests. Union Leader argues that the trial court correctly ordered disclosure, but erred in failing to award it attorney's fees and costs.

█ Resolution of NHRS's first two arguments requires us to interpret RSA 91-A:4, I-a, "which is a question of law that we review *de novo.*" *ATV Watch v. N.H. Dep't of Transp.*, 161 N.H. 746, 752 (2011) (quotation omitted).

> When interpreting a statute, we first look to the plain meaning of the words used and will consider legislative history only if the statutory language is ambiguous. We resolve questions regarding the Right-to[-]Know law with a view to providing the utmost information in order to best effectuate the statutory and constitutional objective of facilitating access to all public documents.

*Id.* (quotation omitted).

RSA 91-A:4, I-a provides:

> Records of any payment made to an employee of any public body or agency listed in RSA 91-A:1-a, VI(a)-(d), or to the employee's agent or designee, *upon* the resignation, discharge, or retirement of the employee, paid in addition to regular salary and accrued vacation, sick, or other leave, shall immediately be made available without alteration for public inspection. All records of payments shall be available for public inspection notwithstanding that the matter may have been considered or acted upon in nonpublic session pursuant to RSA 91-A:3.

RSA 91-A:4, I-a (emphasis added).

The trial court found the statutory language unambiguous and concluded that it subjected to "mandatory disclosure" "any payments made to state employees [who] have retired." NHRS challenges that conclusion, arguing that "[t]he plain language of the statute does not require disclosure of

retirement payments to retirees, but rather only applies to incentive payments made to employees to bring about their retirement."

The trial court construed the term "upon" as used in the statute to mean "immediately or very soon after" and concluded that the term "does not limit the statute to one-time payments remitted at the moment of retirement, but instead contemplates payments made both immediately at the moment of retirement and during the duration of retirement." (Quotation omitted.) NHRS contends that this interpretation, covering payments made throughout retirement, "stretches 'very soon after' far beyond the plain meaning of 'upon.' " We agree. Although the definition cited by the trial court is an accepted meaning of the term, it does not support the court's construction of the statute. Rather, it requires the payment to be temporally proximate to the occasion of retirement, a construction more in line with that put forth by NHRS.

■ Nevertheless, Union Leader argues that the term " 'upon' is synonymous with 'after' or 'in the event of' " and, therefore, any payment made "upon" the retirement of a public employee includes "every single payment made by a public entity as a result of the retirement, including NHRS's payments to a retired employee as retirement allowance." We conclude that both of the above definitions of the term "upon" are acceptable and that both NHRS's and Union Leader's constructions of the statute are plausible. "Since there is more than one reasonable interpretation of the[] statutory provision[], we conclude that the statute is ambiguous, and we look to legislative history to aid our analysis." *Appeal of Gamas*, 158 N.H. 646, 649 (2009).

■ RSA 91-A:4, I-a was enacted in 1997 by Laws 1997, 90:2. The provision was prefaced by the following findings:

> The general court hereby finds that it is essential to the conduct of public business that public bodies, in order to be accountable to the people, make available all records pertaining to payments made to employees of the public body *in connection with their leaving employment* that *are not payments associated with* an employee's salary and *accrued benefits*.

Laws 1997, 90:1 (emphasis added). Representative Sandra B. Keans, for the Judiciary and Family Law Committee, stated before the House of Representatives: "The committee agreed with the sponsor that when a public employee is terminated, the financial payment should be public information available under the right-to-know law. This bill does not in any way provide for disclosure of personnel issues." N.H.H.R. JOUR. 426 (1997). Before the Senate, Senator Sheila Roberge explained the impetus for the bill:

> This bill makes payments made in addition to regular salary and accrued vacation, sick, or other leave paid to an employee of a public body upon the employee's resignation, discharge, or retirement, subject to the right-to-know law. This bill arose out of a situation in Hampton wherein the town manager was paid one hundred and twenty-five thousand dollars to vacate the position immediately. Evidently the decision may have been made in haste, and the accounting methods used to calculate the severance sum [were] not readily available. Under HB 624, concerned citizens will be able to discern what information was used to calculate the *severance pay*.

N.H.S. JOUR. 501 (1997) (emphasis added). The legislative history clearly supports NHRS's argument that RSA 91-A:4, I-a was intended to apply "only . . . to incentive payments made to employees to bring about their retirement," not to regular retirement annuities.

Union Leader contends that regardless of legislative history, the statute applies to retirement annuities. It argues that "[t]he legislature could have drafted the amendment to be narrowly tailored to address the fact pattern at issue in the Town of Hampton," but instead "chose to make 'any' and 'all' records of payments immediately available." We are not persuaded. Having found that the statutory language the legislature chose to use, as a whole, is ambiguous, we are obliged to consult legislative history. *See Barksdale v. Town of Epsom*, 136 N.H. 511, 514 (1992) (noting that "inherent ambiguity necessitates an investigation beyond the statute to the relevant legislative history," among other interpretive aids). Where that history plainly supports a particular construction of the statute, we will adopt that construction, since our task in interpreting statutes "is to determine legislative intent." *Goldstein v. Town of Bedford*, 154 N.H. 393, 395 (2006) (quotation omitted).

Although we have concluded that RSA 91-A:4, I-a does not compel disclosure of the records at issue, the question remains whether they are subject to disclosure under the general mandate of RSA 91-A:4 and Part I, Article 8 of the New Hampshire Constitution. Union Leader asserts that "NHRS does not deny that it is a public entity, administering public funds, and that its records are subject to the Right-to-Know Law. Neither [RSA chapter] 100-A nor [RSA] 91-A:5 contains any explicit provision for confidentiality of NHRS records." NHRS, however, contends that the requested records are exempt from disclosure under RSA 91-A:5, IV because release of that information would "interfere[] significantly with a retiree's privacy."

RSA 91-A:5, IV exempts from the disclosure provisions of RSA chapter 91-A the following:

> Records pertaining to internal personnel practices; confidential, commercial, or financial information; test questions, scoring keys, and other examination data used to administer a licensing examination, examination for employment, or academic examinations; and personnel, medical, welfare, library user, videotape sale or rental, and other files whose disclosure would constitute invasion of privacy.

RSA 91-A:5, IV.

We have stated that this section "means that financial information and personnel files and other information necessary to an individual's privacy need not be disclosed." *Mans v. Lebanon School Bd.*, 112 N.H. 160, 162 (1972). In determining whether the release of public records would entail an invasion of privacy under RSA 91-A:5, IV, we conduct a three-step analysis:

> First, we evaluate whether there is a privacy interest at stake that would be invaded by the disclosure. If no privacy interest is at stake, the Right-to-Know Law mandates disclosure.
>
> Next, we assess the public's interest in disclosure. Disclosure of the requested information should inform the public about the conduct and activities of their government. Finally, we balance the public interest in disclosure against the government interest in nondisclosure and the individual's privacy interest in nondisclosure.

*Lamy v. N.H. Pub. Utils. Comm'n*, 152 N.H. 106, 109 (2005) (citations omitted). "Whether information is exempt from disclosure because it is private is judged by an objective standard and not by a party's subjective expectations . . . ." *Id.*

NHRS argues that the trial court erred in conducting this analysis by failing to recognize the privacy interest at stake, and failing to "assess[] the minimal public interest in this matter." In other words, NHRS contends that the trial court erroneously truncated the analysis at the first factor because it "erred in failing to recognize any privacy interest in a retiree's annual benefit."

The trial court found Union Leader's request for retirement records "analogous to the petitioner's request for the names and salaries of teachers in *Mans*." It concluded that disclosure of retirees' names and the

amount of their benefits would "not invade any privacy interest" and therefore ruled that disclosure was mandatory.

■ In *Mans*, we addressed whether the Right-to-Know Law entitled a resident taxpayer of Lebanon to disclosure of the name and salary of each schoolteacher in the Lebanon School District. *Mans*, 112 N.H. at 161. We determined that "[t]he salaries of public employees . . . are not intimate details the disclosure of which might harm the individual" and "conclude[d] that it was the determination of the legislature that disclosure of salaries of schoolteachers is not a disclosure of those intimate details which would constitute invasion of privacy." *Id.* at 164 (quotations and ellipsis omitted). In so holding, we "noted that for many years in this State salaries of public officials and employees, State and municipal, have been commonly published by statute, or made available to the public or disclosed voluntarily without significant damage to individual dignity or the efficient management of the State system." *Id.* at 163 (citation omitted); *see* RSA ch. 94 (2001 & Supp. 2010).

We followed *Mans* in *Professional Firefighters of New Hampshire v. Local Government Center*, 159 N.H. 699 (2010), where we affirmed an order requiring the Local Government Center to disclose the "names and individual salary information" of its employees. *Prof'l Firefighters*, 159 N.H. at 710. We concluded that the private employees of the Local Government Center, a conceded governmental entity, had "no greater privacy interest regarding their individual salary information than traditional public employees." *Id.* at 708.

■ NHRS acknowledges the holdings of *Mans* and *Professional Firefighters* with respect to the salaries of employees of governmental entities, but contends that neither case "stands for the proposition that there is absolutely no privacy interest in such information." To a certain extent, we agree, having "acknowledged[, in *Mans*,] that salary information generally constitutes private information and would be subject to the exemption at issue if we were to construe that exemption broadly." *Prof'l Firefighters*, 159 N.H. at 708. Nevertheless, that does not end our inquiry. Where, as here, an "exemption is claimed on privacy grounds, we examine the nature of the requested document or material and its relationship to the basic purpose of the Right-to-Know Law." *Union Leader Corp. v. N.H. Housing Fin. Auth.*, 142 N.H. 540, 554 (1997) (quotation omitted). NHRS argues that the information at issue here is critically different from the employees' salaries at issue in *Mans* and *Professional Firefighters*. Specifically, it argues that the trial court failed to recognize significant differences "between employees of a governmental entity and retirees, and . . . between salaries and retirement benefits."

It argues, for example, that "[r]etirement benefits ... differ from salaries as the amount of one's retirement benefit may depend on an individual's particular and personal family and financial situation," such as the retiree's divorce, separation or disability, which the retiree "ha[s] a strong interest in keeping ... private." Union Leader counters that judicial orders such as divorce decrees are already public records and that it is not seeking information about any retiree's medical or disabling condition. We conclude that while the amount of a retiree's benefit may be affected by private information such as disability, disclosure of the amount does not reveal any of that private information. Thus, we are not persuaded by NHRS's argument.

NHRS further contends that retirees differ from the schoolteachers in *Mans* because they "are more likely to be elderly and specifically targeted by fraudulent solicitations and scams." We agree with Union Leader, however, that this claim is speculative at best given the meager evidence presented in its support.

NHRS further relies on *Lamy*, in which we held that the Right-to-Know Law did not require disclosure of the names and street addresses of residential customers of Public Service Company of New Hampshire (PSNH) contained in a report filed by PSNH with the New Hampshire Public Utilities Commission. *Lamy*, 152 N.H. at 107, 113. NHRS asserts that although *Lamy* did not involve a request for financial information, we recognized that such information "raises the stakes and implicates an individual's privacy interest."

In *Lamy*, we stated: "We are cognizant that the privacy interest of residential customers in this case is weaker than in cases where names and addresses are associated with other private information, such as financial information." *Id.* at 110. Thus, while we opined that inclusion of financial information in a Right-to-Know request would strengthen the privacy interest associated with names and addresses, we did not assess the strength of an interest in names and financial information without addresses. Indeed, the inclusion of addresses was significant in *Lamy*, as we noted that "disclosing a person's name and address implicates that person's privacy rights because the disclosure serves as a conduit into the sanctuary of the home." *Id.* (quotation and brackets omitted). Because addresses were not requested here, we find *Lamy* inapposite. Furthermore, while "[w]e are cognizant ... that individual names and home addresses are often publicly available," *id.*, we conclude that fact adds little weight to the retirees' privacy interest. *See Sonoma County Employees' Retirement Ass'n v. Superior Ct.*, 130 Cal. Rptr. 3d 540, 555 (Ct. App. 2011) (noting that the exclusion of addresses and other contact data from the California Public Records Act request "diminishe[d] the force" of retirement association's

argument that disclosure of retirees' and retirement benefits "will expose its retirees to annoyance and abuse").

NHRS also argues that in finding no privacy interest at stake, the trial court failed to recognize that retirement annuities are "fundamentally different from salaries which may be affected by the action of a local governing body." We find this argument more applicable to the second prong of the analysis and will address it there. In sum, we find that retirees have a privacy interest in information associating their names with the amount of their retirement benefits, but conclude that it is not appreciably different from public employees' interest in keeping the amount of their salaries private.

NHRS next argues that the trial court erred by failing to "assess[] the minimal public interest in this matter." It contends that "[d]isclosure of names with financial information does not tell the public anything directly about what the NHRS is up to" and asserts that "[a]t most, the Union Leader seeks 'derivative use of the information.'"

■ We have noted that disclosure of requested information is not warranted when it "does not serve the purpose of informing the citizenry about the activities of their government." *Union Leader Corp. v. City of Nashua*, 141 N.H. 473, 477 (1996) (quotation omitted). NHRS argues that disclosing the amount of retirement benefits that named retirees receive "does not inform the public as to the structure, duties, management, determinations or procedures of the NHRS." It cites *National Association of Retired Federal Employees v. Horner*, 879 F.2d 873 (D.C. Cir. 1989), for the proposition that while aggregate annuity data "might be of public interest, identifying individual recipients did not implicate a public interest." *National Association of Retired Federal Employees*, however, did not involve a request for individual annuity amounts but rather for annuitants' names and addresses. *National Ass'n of Retired Federal Emp.*, 879 F.2d at 874. We therefore find it inapposite.

■ Union Leader, on the other hand, argues that the aggregate data "NHRS proposes to disclose, without its members' names, sheds absolutely no light on whether its formula for calculating retirement benefits is being followed, or whether it has been calculated correctly with respect to individual members." It is not immediately obvious, however, how disclosure of names and benefit amounts alone, sheds light upon whether NHRS is calculating benefits correctly or following its formula for calculating benefits. Thus, NHRS argues that Union Leader seeks, at most, derivative use of the requested information. We explained the concept of derivative use in *Lamy*:

The asserted public interest in disclosing [the requested information] stems not from the disclosure of the . . . [withheld] information itself, but rather from the hope that the petitioner, or others, may be able to use that information to obtain additional information outside the [public entity's] files. The public has an interest in the disclosure of the [requested information] solely because of how [it] can be used by the petitioner, or others, to discover additional information about the [public entity].

*Lamy*, 152 N.H. at 111 (quotation, citation and brackets omitted). Where derivative use constitutes the only public interest in the information's disclosure, it is entitled to little weight. *Id.* at 113.

■ Union Leader counters that it does not seek a derivative use as it is not hoping to use the information to obtain additional material from an outside source; rather, it asserts that "[t]he names of the annuitants are the necessary pieces of information missing in order for the public to have effective, meaningful access to information about the activities of NHRS." At the hearing before the trial court, Union Leader's attorney explained:

[W]ithout knowing the name [of the annuitant], it's impossible for anyone to know whether those payments are calculated in accordance with the formula, and the example that's coming to me is, if the person is named, then the public can know, wait, that's not right, or how can it be that he makes that much money in his retirement when he only served as a public servant for a year?

. . . .

THE COURT: So, you're essentially saying that the public's right to know is the right to know information that is — assists them in making an assessment as to whether something is amiss, and that the name, given the public's perhaps other knowledge about that individual, will assist them in them saying, wait. Whereas, if they get a list [without names], they just don't know whether the fellow that's at the top is someone that they would have suspicion about because of information they'd know about him separate and apart from the information contained in the list.

MS. SULLIVAN: There would be no way of knowing that. And I'd submit that combining the publication of the name with the information that's out there in the public already isn't derivative use. It's very direct use. It doesn't require additional steps and research.

It appears, then, that Union Leader seeks to use the information to uncover potential governmental error or corruption. We cannot say that there is no public interest in such a use. *See Prof'l Firefighters*, 159 N.H. at 709 ("Public scrutiny can expose corruption, incompetence, inefficiency, prejudice and favoritism.").

■ As noted above, NHRS also argues that retirement annuities are "fundamentally different from salaries which may be affected by the action of a local governing body. Rather, the amount of a retirement benefit is a formulaic calculation based on two variables, a member's average final compensation and a member's creditable service." In its pleadings below, NHRS used this distinction to argue that because NHRS could not alter the formula, the information sought by Union Leader reveals nothing about the operations of NHRS. Even assuming NHRS has no discretion to alter the calculation of benefits, that is not dispositive of the public's interest in knowing the amount thereof. Public employers contribute to the fund used to pay annuities. *See* RSA 100-A:16, II (regarding the State annuity accumulation fund). "[K]nowing how a public body is spending taxpayer money in conducting public business is essential to the transparency of government, the very purpose underlying the Right-to-Know Law." *Prof'l Firefighters*, 159 N.H. at 709. To the extent that public funds are used to pay the annuities at issue, we conclude the public has some interest in knowing the amounts and to whom they are paid. *See Sonoma County Employees' Retirement Ass'n*, 130 Cal. Rptr. 3d at 555 (noting that even though only twenty percent of benefits paid by retirement association came directly from contributions of public employers, "the program [the association] administers is in the end a form of deferred *public* compensation for county employees" and "[a]s such, the taxpaying public has substantially the same interest in its operations and payout levels as it does in the salaries of county employees").

■ ■ Our final task is to "balance the public interest in disclosure against the government interest in nondisclosure and the individual's privacy interest in nondisclosure." *Lamy*, 152 N.H. at 109. We bear in mind that "[t]he party resisting disclosure bears a heavy burden to shift the balance toward nondisclosure." *N.H. Housing Fin. Auth.*, 142 N.H. at 554 (quotation omitted). We have determined that retirees have a privacy interest in their names and benefit amounts, but that interest is comparable to public employees' privacy interest in their names and salaries. The public has an interest both in knowing how public funds are spent and in uncovering corruption and error in the administration of NHRS. In light of these conclusions, our prior decisions compel the result: Having held that a privacy interest on par with that at issue here was outweighed by the

public interest in knowing "where and how their tax dollars are spent," we similarly conclude that the disclosure of the information sought here would not constitute an invasion of privacy under RSA 91-A:5, IV. *Mans*, 112 N.H. at 163, 164; *see Prof'l Firefighters*, 159 N.H. at 710.

Finally, Union Leader seeks reversal of the trial court's denial of its attorney's fees and costs. NHRS counters that Union Leader waived that claim by failing to file a cross-appeal. We agree and will not consider the request. *See Appeal of Campaign for Ratepayers' Rights*, 162 N.H. 245, 249 (2011).

*Affirmed.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.