Merrimack
No. 2002-314

### THE RICHMOND COMPANY, INC., INDIVIDUALLY AND AS AGENT FOR ATCNH REALTY, LLC

v.

### CITY OF CONCORD

Argued: February 12, 2003
Opinion Issued: April 11, 2003

*Cleveland, Waters and Bass, P.A.*, of Concord (*David W. Rayment* and *Philip M. Hastings* on the brief, and *Mr. Rayment* orally), for the plaintiff.

*Paul F. Cavanaugh,* city solicitor, of Concord, and *Peter J. Loughlin,* of Portsmouth (*Mr. Cavanaugh* and *Mr. Loughlin* on the brief, and *Mr. Loughlin* orally), for the defendant.

*Charles P. Bauer,* of Concord, by brief and orally, *pro se,* as intervenor.

DALIANIS, J. The plaintiff, The Richmond Company, Inc. (Richmond), was denied site plan approval by the City of Concord Planning Board (board) to construct a retail shopping center, but successfully appealed the decision to the Superior Court (*Arnold,* J.). The defendant, City of Concord (city), appeals the trial court's decision and the plaintiff cross-appeals. We reverse.

In March 2001, Richmond applied for site plan approval to construct a shopping center, including a supermarket, on a 34.4-acre parcel located off South Main Street in Concord. The proposal provides for the demolition of all existing structures on the property and the construction of four retail buildings totaling approximately 180,000 square feet. The property is owned by ATCNH Realty, LLC, and lies within the Redevelopment District (RDV), which includes the General Business (BD) district, Industrial Park (MB) district, and Shopping Center (BB) district. Given the location of the property, Richmond must satisfy the requirements for development standards and special design criteria in city ordinance 28-11-7(d) and (e) to build in the RDV district. *See* CONCORD, N.H., ORDINANCES 28-11-7 (d), (e) (hereinafter city ordinance).

Following several public hearings at which testimony and documentary evidence were received, the board voted unanimously to deny Richmond's site plan application because it failed to meet the requirements of city ordinance 28-11-7. Specifically, the board concluded that the Richmond project failed to satisfy criteria of the ordinance in that: 1) the project would not generate either a short term or long term expansion of the city's economic base, *see* CONCORD, N.H., ORDINANCES 28-11-7(b), (d)(3); 2) the applicant's economic impact statement did not adequately address the fiscal costs and net fiscal impacts to the city for municipal services, *see id.* 28-11-7 (d)(3)(h); 3) the application failed to address certain ancillary employee benefits, *see id.* 28-11-7 (d)(4); 4) the project was incompatible with the existing architectural and historic character of the area, *see id.* 28-11-7 (e)(2); and 5) the project was not specific to the site and the design did not enhance the scenic and/or recreational uses of the South End Marsh, which is part of the Merrimack River watershed and floodplain, *see id.* 28-11-7 (e)(4).

Richmond appealed to the superior court. *See* RSA 677:15 (1996 & Supp. 2002). In its order, the court found that the board's decision was not supported by the evidence and that the board had failed to "share[] any of

its concerns" regarding Richmond's compliance with city ordinance 28-11-7, thereby depriving Richmond of the opportunity to address and remedy any problems. As a result, the court remanded the case to the board, concluding that:

> The reasonableness of the Concord Planning Board's decision was not supported by evidence that was before the Board. In light of the lack of evidence to substantiate the Planning Board's findings, coupled with the lack of input provided by the Planning Board to the petitioner, the court REMANDS so that the Planning Board may engage in meaningful dialogue with the petitioner as well as validate its findings.

(Citation omitted.) The city and intervenor filed a joint motion to reconsider the trial court's order, which was denied. This appeal and cross-appeal followed.

On appeal, the city argues that the trial court erred in ruling that the board failed to engage in good faith dialogue to assist Richmond in meeting the requirements of site plan approval. It also asserts that there was sufficient evidence to support the board's denial of the Richmond site plan application. On cross-appeal, Richmond contends that the trial court erred in remanding the case rather than approving the site plan application.

In reviewing a planning board decision, the superior court may reverse or affirm, wholly or partly, or may modify the decision brought up for review when there is an error of law or when the court is persuaded by the balance of probabilities, on the evidence before it, that said decision is unreasonable. RSA 677:15, V. We will not overturn the superior court's decision unless it is unsupported by the evidence or legally erroneous. *Deer Leap Assocs. v. Town of Windham*, 136 N.H. 555, 557 (1992). In reviewing the superior court's decision, "[w]e look to whether a reasonable person could have reached the same decision as the trial court based on the evidence before it." *Mt. Valley Mall Assocs. v. Municipality of Conway*, 144 N.H. 642, 647 (2000) (quotation omitted).

*I. Planning Board Assistance*

The city first argues that the trial court erred by ruling that the board failed to engage in good faith dialogue with Richmond to assist it in satisfying the requirements for site plan approval.

We have previously recognized that in furtherance of Part I, Article 1 of our State Constitution, municipalities have an obligation "to provide assistance to all their citizens" seeking approval under zoning ordinances.

*Savage v. Town of Rye*, 120 N.H. 409, 411 (1980); *Carbonneau v. Town of Rye*, 120 N.H. 96, 99 (1980). In *Carbonneau*, for example, we upheld the decision of a zoning board of adjustment denying a developer's request for a building permit to construct a septic system on his property. *Carbonneau*, 120 N.H. at 97-98. Although the town had not foreclosed the possibility of issuing a building permit to the applicant and although there were alternatives to the proposed septic system, the town had indicated that it was "not in the business of telling [the developer] what to do so that he can get approval ...." *Id.* at 99 (quotation omitted). Given that the developer had been attempting, unsuccessfully, to develop his land for four and one-half years, we strongly encouraged the town, in furtherance of its duty to provide assistance to its citizens, to attempt to negotiate a workable plan acceptable to both sides. *Id.*

In *Savage*, we held that a town planning board failed to approve or disapprove a site plan application within ninety days as prescribed by statute. *Savage*, 120 N.H. at 411. In rejecting the trial court's reasoning that the board did not have to respond to the application because it was improper in form, we stated that "[n]ot only is such a reading in direct contravention of the statute, but it is also in violation of N.H. CONST. pt. 1, art. 1." *Id.* (citation omitted). We reminded towns that it is their function to provide assistance to their citizens, and that the "measure of assistance certainly includes informing applicants not only whether their applications are substantively acceptable but also whether they are technically in order." *Id.*

Richmond argues that the board failed to provide meaningful assistance because it did not comment on or question the substance of Richmond's application during the public hearings as it related to city ordinance 28-11-7. It argues further that the board improperly failed to assist it because it did not respond to specific inquiries raised during and subsequent to the public hearings with respect to the site plan application's compliance with city ordinance 28-11-7. We disagree.

The situations in which we have required a municipality to assist applicants are distinguishable from this case. Cases such as *Carbonneau* and *Savage* are aimed at preventing municipalities from ignoring an application or otherwise engaging in dilatory tactics in order to delay a project. Further, those cases did not involve a board's actions during the public hearing process, in which the board must maintain a certain level of impartiality. *See* RSA 673:14 (1996 & Supp. 2002).

Here, Richmond acknowledged that its site plan project received "rigorous review," and that it was appreciative of the input from the board, city staff and the public throughout that application process. It further stated that "[w]ell prior to the submittal of the Application, the Applicant

discussed its plans for the area with City Administration, the City's Engineering and Planning Departments, City Councilors and numerous others."

■Throughout the hearings, members of the public commented on whether Richmond's project complied with city ordinance 28-11-7. At the close of the hearings on June 27, 2001, the board allowed Richmond to offer rebuttal testimony. Further, Richmond filed a detailed letter with the board on July 17, 2001, the final day the board accepted evidence, addressing issues raised throughout the hearing, including issues relating to the project's compliance with the criteria in city ordinance 28-11-7. That the board did not comment on the suitability of the project in response to Richmond's inquiries prior to its deliberative session and vote is neither inappropriate nor unusual since the purpose of the board's deliberative session is to decide the issues.

■As both parties agree, the board's actions in providing assistance to an applicant must be reasonable. *Cf. Batakis v. Town of Belmont*, 135 N.H. 595, 597-98 (1992). In light of the record, we cannot conclude that the board acted unreasonably in this case or that it failed to fulfill its constitutional obligation to provide assistance to its citizens. The trial court's decision to the contrary is therefore in error.

*II. Sufficiency of the Evidence*

The city next argues that the trial court erred in ruling that there was insufficient evidence to support the board's denial of Richmond's site plan application.

There is no dispute that Richmond must satisfy all of the requirements in city ordinance 28-11-7 (d) and (e). Thus, if any of the reasons offered by a planning board to reject a site plan application support its decision, then an appeal from the board's denial must fail. *Star Vector Corp. v. Town of Windham*, 146 N.H. 490, 493 (2001). Because we conclude that there was sufficient evidence to support one of the reasons relied upon by the board to deny Richmond's site plan application, we need not address the sufficiency of its other reasons. *See id.*

The board is entitled to rely, in part, upon its own judgment and experience when reviewing applications for various land uses. *See Durant v. Town of Dunbarton*, 121 N.H. 352, 357 (1981). The board's decision, however, must be based upon more than the mere personal opinion of its members. *Id.*

One reason for the board's denial of the site plan application was that the project is incompatible with the existing architectural and historic character of the area. City ordinance 28-11-7 (e)(2) provides:

Uses proposed to be developed in the RDV District shall be of architectural merit and shall be designed to take advantage of their location vis-á-vis the interstate highway system and the Merrimack River. They shall be of such architectural character to be compatible with the historic elements of the capital City and shall make generous use of landscaped spaces, plaza areas, and/or natural features indigenous to the Merrimack River valley.

In its decision, the board stated, in part, as follows:

While the Board found the development to be appropriate for a suburban strip retail shopping center, the Board also found the project to be incompatible with the existing architectural and historic character of the National Register Eligible buildings on or near the site and inconsistent with the historic architecture, urban design and land use pattern of the Capital city. . . . The proposed development did not make any but the most minimal use of landscape spaces, plaza areas and natural features (South End Marsh).

Testimony at the public hearings and numerous documentary submissions support these findings. Various documentary submissions explained the value of the area's historic buildings and the need to preserve this architectural style. For example, the board received an opinion letter by Randall Raymond of Agora Planners & Associates explaining that the Richmond project "shows indifference to the history and character of the city since it proposes demolition of an important industrial legacy . . . ." Raymond also noted that the design "provides little landscape design, no plaza and does not enhance the tributary to the Merrimack River." In conclusion, he stated that the design for the Richmond site "falls short of meeting the specific criteria of the RDV District [and that] [i]n many aspects the site design contravenes the criteria . . . ."

The board also received letters from the Concord Heritage Commission and the New Hampshire Division of Historical Resources emphasizing the importance of preserving the historic buildings located on the subject property. In one letter, the Concord Heritage Commission stated that Richmond's own consultant acknowledged that the buildings were eligible for the National Register of Historic Places, and that the State Historic Preservation Office upheld that determination. The commission also noted that these buildings are "imminently [sic] reusable" and are adaptable to a number of different uses.

Michael Munson, an architect, also submitted letters to the board explaining the importance of the historic buildings and surrounding property. He opined that the Richmond project does not conform to the intent of the RDV district or satisfy the special design criteria provided in city ordinance 28-11-7 (e). Finally, the board received letters and memoranda from a law firm representing citizens opposed to the Richmond project, in which the firm echoed the same concerns regarding the project's failure to comply with design criteria in city ordinance 28-11-7 (e)(3) in that the project lacks architectural merit. It argued that the proposed uses consist of the standard beige "big box" strip mall design that does not capture the historic elements of the city.

The trial court appears to have given significant weight to the fact that the architectural design review committee found the Richmond project design to be suitable. That the design review committee may have found the Richmond project design suitable, however, is not binding upon the board. As explained during the board's deliberative session, the design review committee did not comment on the project's relationship with the existing historic character of the site or its compatibility with the RDV district.

Accordingly, we conclude that there was sufficient evidence before the board to allow it, in conjunction with its own judgment and experience, to find that Richmond's proposal failed to satisfy the specific design criteria of city ordinance 28-11-7 (e)(2). The trial court erred, therefore, in finding that the board's decision to deny the Richmond project was unreasonable based upon the evidence before it.

Finally, Richmond argues that even if the trial court erred in finding the evidence insufficient to support the board's denial, the case should be remanded for consideration of additional arguments it raised before the trial court that were not addressed. The moving party, in this instance Richmond, is responsible for presenting a record sufficient to allow the court to decide the issue presented on appeal. *See Rix v. Kinderworks Corp.*, 136 N.H. 548, 553 (1992). Because there is nothing in the record, nor any citation in Richmond's brief, indicating that it raised additional issues before the trial court, we have no basis upon which to remand this case.

*Reversed.*

BROCK, C.J., and BRODERICK, NADEAU and DUGGAN, JJ., concurred.