Rockingham
No. 2003-121

ERNEST M. CHERRY, JR. & a.

v.

TOWN OF HAMPTON FALLS & a.

Argued: October 9, 2003
Reargued: March 10, 2004
Opinion Issued: April 16, 2004

*Raymond P. Blanchard, Esq., P.A.*, of Portsmouth (*Raymond P. Blanchard* on the brief and orally), for the plaintiffs.

*Pierce Atwood*, of Portsmouth (*Lawrence M. Edelman* and *Kimberly J.H. Memmesheimer* on the brief, and *Mr. Edelman* orally), for the defendants.

BRODERICK, C.J. The defendants, Town of Hampton Falls and Hampton Falls Planning Board (planning board), appeal an order of the Superior Court (*McHugh*, J.) ruling that the planning board's denial of an application for a subdivision submitted by the plaintiffs, Ernest M. Cherry, Jr. and Carole A. Cherry, was unlawful and unreasonable. We reverse.

The record supports the following facts. In April 2002, the plaintiffs submitted an application to the planning board to subdivide 84.5 acres of land in Hampton Falls into twenty-five individual lots. The application was later amended to include only nineteen individual lots. The proposed subdivision included a paved road, which required filling approximately 10,500 square feet of wetlands. Therefore, the plaintiffs applied for a special use permit as required by the Hampton Falls Zoning Ordinance.

Section Eight of the Hampton Falls Zoning Ordinance provides for a "Wetlands Conservation District." The general purpose of this district is to "preserve and protect the many wetland areas in [the] town for the benefit of public health, safety and welfare." Subsection 8.4 provides in pertinent part:

> Uses prohibited in the District or within 100 feet of the District include but are not limited to:
>
> 8.4.1 Any structure, impermeable surface [paved road] or parking space except as may be provided for in subsection[] 8.5 . . . of this Section.

Subsection 8.5 provides in pertinent part:

> 8.5.1 A special use permit may be granted by the Planning Board for the construction of roads . . . within the District, provided that all of the following conditions are found to exist:
>
> > 8.5.1.1 The proposed construction is essential to the productive use of land not within the wetlands[;]

8.5.1.2 Design and construction methods will be such as to minimize detrimental impact upon the wetland and will include restoration of the site as nearly as possible to its original grade and condition;

8.5.1.3 No alternative route which does not cross a wetland or has less detrimental impact on the wetland is feasible; and

8.5.1.4 Economic advantage alone is not reason for the proposed construction.

On July 23, 2002, the planning board held a public hearing regarding the plaintiffs' application for a special use permit. Kevin L. Camm, principal of KLS Land Planning, who had been retained by the plaintiffs, stated that a safe road could not be designed that could both avoid wetlands impact and serve the needs of the proposed subdivision. Although Camm presented an alternate road design with reduced wetlands impact, James Gove, principal of Gove Environmental Services, Inc., who had also been retained by the plaintiffs, stated that such a design caused increased safety concerns. Nancy Roka, chairperson of the Hampton Falls conservation commission, stated that the plaintiffs could design an alternate road with reduced impact on the wetlands and the wetlands buffer, which is the area within 100 feet of the wetlands, although it would result in fewer than the proposed nineteen house lots. Planning board member Smith noted that a road with reduced wetlands impact appeared to be a possibility and that the plaintiffs needed to address this issue. When asked by planning board vice-chairman Graham if there was a safe alternative that would have a reduced impact on the wetlands and the wetlands buffer, Gove stated that he had only analyzed direct wetlands impact and had not had an opportunity to analyze other designs.

At the end of the hearing, the planning board requested that the plaintiffs submit a road design that addressed the impact upon the wetlands buffer and options to minimize adverse impact. The plaintiffs declined the planning board's request because they believed that the plan they had presented represented the most viable option. The planning board voted to deny the plaintiffs' application for a special use permit because it "failed to address the extent of impact in the wetland[s] buffer areas and provide for mediation [*sic*] and/or mitigation," and also because the applicants "failed to show that there [was] no feasible alternative as required in [subsection 8.5.1.3]." Consequently, the planning board voted

to deny the subdivision application. The plaintiffs appealed to the superior court pursuant to RSA 677:15 (Supp. 2002).

The plaintiffs argued that the decision of the planning board was "unreasonable, unlawful and ... a violation of the[ir] Constitutional rights." The plaintiffs also argued that the decision of the planning board constituted an inverse condemnation and denied affordable housing to people with low and moderate incomes.

The trial court addressed only whether the proposed road complied with the requirements of subsection 8.5 and declined to address the plaintiffs' other arguments because they had not been raised before the planning board. The trial court ruled that "it was not reasonable for the Planning Board to reject the plaintiffs' subdivision plan on the basis of the personal opinion of the chairperson of the Conservation Commission as to where the proposed roadway should be located." It found that "[s]ome Planning Board members at the ... meeting suggested that perhaps a better roadway configuration could be worked out if the plaintiffs agreed to meet with the Conservation Commission. However, based upon the evidence before [the planning board], there was no legitimate reason to reject the plaintiffs' revised roadway layout on the hope that perhaps a better one could be devised over time." It concluded that "[t]he plaintiffs' plan [needed to] be reasonable; [but that there was] no requirement under the law that it be perfect," and that the plaintiffs' application satisfied all the requirements of subsections 8.5.1.1 to 8.5.1.4. It based its ruling, in part, on a permit issued by the New Hampshire Department of Environmental Services Wetlands Board, which it found was further evidence that the plaintiffs' overall subdivision plan was reasonable.

The defendants moved for reconsideration, arguing that the court exceeded the standard of review prescribed by RSA 677:15 and, instead, acted as a "fact-finding forum." The motion was denied. This appeal followed.

The defendants contend that the trial court: (1) erred in ruling that the decision of the planning board was unlawful and unreasonable; (2) erred in its review and application of the zoning ordinance; and (3) improperly made judgments regarding the quality of wetlands involved and the impact the proposed subdivision would have on those wetlands.

When a trial court's review of a planning board decision is appealed, we will uphold the trial court's decision unless it is not supported by the evidence or is legally erroneous. *Richmond Co. v. City of Concord*, 149 N.H. 312, 314 (2003). We look to whether a reasonable person could have reached the same decision as the trial court based upon the evidence before it. *Id.*

■ In this case, the trial court's review of the planning board's decision was governed by RSA 677:15, V, which provides that the trial court "may reverse or affirm, wholly or partly, or may modify the decision brought up for review when there is an error of law or when the court is persuaded by the balance of probabilities, on the evidence before it, that said decision is unreasonable." The trial court may not substitute its judgment for that of the board. *Saturley v. Town of Hollis*, 129 N.H. 757, 760 (1987). Furthermore, if any of the board's reasons for denial of the special use permit support its decision, then the plaintiffs' appeal must fail. *See NBAC Corp. v. Town of Weare*, 147 N.H. 328, 332 (2001). Accordingly, we must determine whether the evidence supports the trial court's decision that the planning board's decision was unlawful or unreasonable.

The planning board found that the plaintiffs "failed to address the extent of impact in the wetland[s] buffer areas" or "show that there [was] no feasible alternative" as required by subsections 8.5.1.2 and 3, because they had not assessed the impact of the proposed road on the wetlands buffer. Subsection 8.5.1.2 requires design and construction methods, which "minimize detrimental impact" upon the wetlands and subsection 8.5.1.3 requires that there be no feasible alternative route, which has "less detrimental impact" upon the wetlands.

The parties agree that the planning board reasonably interpreted the term "wetland[s]," as used in subsections 8.5.1.2 and 3, to be coextensive with the geography described in subsection 8.4, which includes not only the wetlands proper but also the 100-foot buffer. Indeed, plaintiffs' counsel acknowledged that reading the provisions otherwise would lead to an absurd result. Although we might not agree, we do believe it would be anomalous to protect the wetlands buffer from road construction, while disregarding its existence for purposes of granting a special use permit pursuant to subsection 8.5.

■ Therefore, it was neither unlawful nor unreasonable for the planning board to require the plaintiffs to establish that the design and construction of the proposed subdivision road would minimize detrimental impact upon the wetlands buffer and that no feasible alternative design would have a less detrimental impact. The plaintiffs failed to make this showing because their expert conceded that he had not analyzed the impact of the proposed road on the wetlands buffer. Accordingly, the trial court erred in finding that the decision of the planning board was unlawful and unreasonable and that the plaintiffs had satisfied the requirements of subsections 8.5.1.1 to 8.5.1.4. Because we reverse the trial court's decision, we need not address the defendants' remaining arguments.

The plaintiffs contend that the permit issued by the New Hampshire Department of Environmental Services Wetlands Board is dispositive of whether they satisfied the requirements of subsection 8.5. The permit alone, however, does not prove that the requirements of subsection 8.5 have been satisfied since it does not address the impact of the proposed construction on the wetlands buffer. As the trial court correctly noted, "[A] municipality is not estopped from creating more restrictive rules for wetlands issues than those required by the [Wetlands] Board."

The plaintiffs also attack the constitutionality and efficacy of the ordinance. However, it is the plaintiffs' compliance with the ordinance that is at issue in this case, not the validity of the ordinance. The trial court found that the "sole issue discussed and decided by the Planning Board was whether the installation of a paved roadway in or around certain wetlands on the plaintiffs' proposed subdivision was permitted under [subsection] 8.5." Therefore, we decline to address the plaintiffs' arguments to the extent they raise issues that were not before the planning board. *See Exeter Hosp. Medical Staff v. Board of Trustees of Exeter Health Resources*, 148 N.H. 492, 499 (2002).

*Reversed.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.