NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2019-0150

PAUL MARTIN

v.

CITY OF ROCHESTER

Argued: February 12, 2020
Opinion Issued: June 9, 2020

Douglas, Leonard & Garvey, P.C., of Concord (Jared Bedrick on the brief), and The MuniLaw Group, of Epsom (Tony F. Soltani orally), for the plaintiff.

The Office of the Rochester City Attorney, of Rochester (Terence M. O'Rourke, city attorney, on the memorandum of law and orally), for the defendant.

HICKS, J. The plaintiff, Paul Martin, appeals an order of the Superior Court (Houran, J.) denying his request for declaratory and injunctive relief against the defendant, City of Rochester (city), and ruling that the city's technical review group (TRG) is not a public body for purposes of the Right-to-Know Law, see RSA ch. 91-A, and that the city's copy fee schedule is in compliance with RSA 91-A:4, IV (Supp. 2016). On appeal, the plaintiff argues that: (1) the TRG is a "public body," as defined by RSA 91-A:1-a, VI(d) (2013), because it is an "advisory committee," and is therefore subject to the open-

meeting requirement of RSA 91-A:2 (Supp. 2019); and (2) the city's copy fee schedule is prohibited by RSA 91-A:4, IV, as it charges citizens requesting a copy of a public record more than the "actual cost" of making the copy. For the reasons that follow, we affirm.

## I. Factual Background & Procedural History

### A. The Technical Review Group

The following facts were found by the court after a bench trial, or are otherwise derived from the record. The TRG is a "self-directed work team"[1] in the city, originally established by a former city manager. According to its statement of purpose, "the TRG is to review projects that are submitted for review to the Planning Board, including site plans and subdivisions." The TRG is made up of city employees, including the chief planner or designee, city engineer, director of code enforcement, fire marshal, police captain, economic development manager or a designee (who chairs the group), and a representative of the conservation commission. The TRG does not have a separate budget and is funded by the departments from which the representatives come.

The city manager is the sole appointing authority for the TRG and has the ability to dissolve or expand the TRG without the approval of the city council. The city manager can appoint or remove TRG members at will. Neither the city council nor the planning board has any input or authority over the TRG. The TRG is not included in the city's charter or any city ordinance.

TRG meetings are not considered public meetings by the city for public notice purposes, and therefore no notices are sent and no minutes are taken at the meetings, although dates and times of the meetings are usually listed on the city's website. Participation and observation by the public are not permitted at TRG meetings. The secretary for the planning department is responsible for scheduling TRG meetings and sending electronic copies of the meeting agenda, applications to be reviewed, and accompanying plans to members of the TRG. The applications and project plans are placed in the planning board file and are available for inspection by the public. TRG members typically communicate using their city e-mail addresses, and although they communicate frequently in their capacity as city employees, they rarely communicate about TRG matters. E-mails sent using city e-mail

---

[1] A self-directed work team is a staff committee formed by the chief executive, or in the city's case, the city manager. The staff committee is given a charge with a specific purpose, and its members are self-directed to determine how they are going to achieve the directive they have been given. Rochester's city manager provided two examples, aside from the TRG, of self-directed work teams that exist within the city.

2

addresses are captured on the city e-mail server and can be requested by the public for inspection.

At trial, the city manager testified that the TRG members advise applicants as well as the planning board, although the TRG has no binding decision-making authority. The director of planning and development for the city testified that neither the TRG as a whole nor its individual members have the authority to grant or deny conditional use permits, waivers, or variances. The director of planning further testified that the city has a constitutional duty to assist applicants preparing to go before the planning board, and that the TRG is part of the city's process in meeting that obligation. To that end, the applicant, or the applicant's agent, presents the application to the TRG. Its members then comment on the plans and suggest changes in accordance with various city regulations, laws, and policies. The TRG does not act as a group; each member makes suggestions based upon that person's specific knowledge. The applicant is free to disregard the TRG's recommendations, and is also free to request additional meetings with the TRG before presenting plans to the planning board. Similarly, the applicant may also contact individual members of the TRG after the TRG meeting.

The city's economic development director testified that the TRG is a group of city employees who work in an informal setting where the applicant can ask questions to prepare for presentations to the planning board. Additionally, the economic development director explained that if the TRG did not exist, the applicant would still have to speak to each one of the staff members comprising the TRG separately before going in front of the planning board. The TRG streamlines the process by having all of the department representatives available to an applicant in one place at the same time. The economic development director further testified that the planning board is not a "rubber stamp" for the TRG. She stated that she has witnessed instances in which the planning board has rejected a project that members of the TRG believed was ready for approval, approved a project that members of the TRG expressed concerns about, and ignored the TRG's comments altogether. The TRG can neither advance nor stop a project from moving forward.

Following a TRG meeting, the city's chief planner prepares a summary of comments made by TRG members during the meeting that is provided to the applicant and placed in the planning board file, which is available for public inspection. The city's economic development director testified that the TRG does not have records of its own, as its only function is to review applications and assist applicants. However, she stated that the comments made on a project by members of the TRG are loaded into a database, which can then be seen by the planning board. This database is a cloud-based system used by city staff to view applications and their respective comments. It is accessible to the public, and an individual interested in accessing the system can create a

3

free account to view comments made on applications, including those made by TRG members.

### B.  Copy Fee Schedule

The plaintiff requested copies of certain documents from the city relating to the planning board and the TRG.  The city charges a fee for making copies of city records or files: for black and white photocopies, the fee is fifty cents per page for the first ten pages and ten cents per page thereafter.  At trial, the city presented evidence of fee schedules from New Hampshire municipalities that are similar to its own.  The city manager testified that the city charges only for the cost of copying, not for the labor associated therewith, and that the cost of copying includes the cost of leasing copy machines, machine maintenance, capital costs, and the cost of paper.  Based on his history and experience as finance director for the city, the city manager also testified that he believes the city is charging a reasonable approximation of the actual cost to the city for producing a photocopy, and that payments for copying are not a revenue source and do not produce a profit.

### C.  Procedural History

In October 2017, the plaintiff sent an e-mail to the city's attorney claiming that the city's practice of prohibiting the public from attending TRG meetings violates the Right-to-Know Law's open-meeting requirement.  The city's attorney responded that the TRG does not hold "meetings" as defined in the Right-to-Know Law because the TRG is not a "public body" subject to its mandate.  Subsequently, in May 2018, the plaintiff filed this suit seeking declaratory and injunctive relief from the city's practice of prohibiting the public from attending TRG meetings.  The plaintiff's petition also challenged the city's copy fee schedule, claiming that it is excessive and chills or deters public access to government records.  After a bench trial, the court denied the plaintiff's prayers for relief.  This appeal followed.

### II.  Discussion

Resolution of this case requires us to interpret the Right-to-Know Law, RSA chapter 91-A, which is a question of law that we review de novo.  Prof'l Firefighters of N.H. v. Local Gov't Ctr., 159 N.H. 699, 703 (2010).  When interpreting a statute, we first look to the plain meaning of the words used and will consider legislative history only if the statutory language is ambiguous.  Id. The ordinary rules of statutory construction apply to our interpretation of the Right-to-Know Law.  Union Leader Corp. v. City of Nashua, 141 N.H. 473, 475 (1996).

## A. TRG as a "Public Body"

The plaintiff first argues that the TRG is a "public body" because it is an "advisory committee," and, therefore, its meetings must be open to the public. See RSA 91-A:2, I (defining a "meeting" as "the convening of a quorum of the membership of a public body"); II (stating that "all meetings . . . shall be open to the public"). The definition of "public body" includes five categories. See RSA 91-A:1-a, VI(a)-(e) (2013). Relevant to this appeal is the category defining a "public body" as: "Any legislative body, governing body, board, commission, committee, agency, or authority of any county, town, municipal corporation, school district, school administrative unit, chartered public school, or other political subdivision, or any committee, subcommittee, or subordinate body thereof, or advisory committee thereto." RSA 91-A:1-a, VI(d). The statute defines an "advisory committee" as:

> [A]ny committee, council, commission, or other like body whose primary purpose is to consider an issue or issues designated by the appointing authority so as to provide such authority with advice or recommendations concerning the formulation of any public policy or legislation that may be promoted, modified, or opposed by such authority.

RSA 91-A:1-a, I (2013).

The plaintiff argues that the TRG is an "advisory committee" because its primary purpose is to consider land use applications and provide advice or recommendations on them to the planning board, a member of which is the city manager, the TRG's appointing authority. We are not persuaded.

Although TRG members make comments on permit applications that may be helpful to the planning board, it does not, as a group, render advice or make recommendations. Rather, each member reviews the application for compliance with the respective department codes and concerns. The record makes clear that, in considering land use applications, the TRG's role is to apprise applicants of the relevant concerns of the municipal departments represented by its members. This process is meant to assist the applicant in preparing the application for the planning board, consistent with the city's constitutional obligation to provide assistance to all its citizens. See Richmond Co. v. City of Concord, 149 N.H. 312, 314 (2003); N.H. CONST. pt. I, art. 1.

The plaintiff, however, reads the phrase "primary purpose" in RSA 91-A:1-a, I, as relating only to the TRG's role in "considering" an application, not necessarily "advising" on it. Under this reading, the plaintiff contends that the TRG's primary purpose is to consider whatever "subject matter . . . the city manager has designated for consideration." We disagree with the plaintiff's reading of the statute.

5

Pursuant to the statute's plain meaning, the phrase "primary purpose" limits which committees, councils, commissions, or other like bodies are advisory committees under the statute. The legislature has accomplished this limitation with the use of the phrase "so as to," which qualifies the verb "consider" that precedes it. Thus, a body's consideration of issues designated by the appointing authority in and of itself is not determinative of whether the body is an advisory committee. Rather, it is the purpose of the body's consideration that is the deciding factor — i.e., whether the body's primary purpose is to consider issues "designated by the appointing authority so as to provide such authority with advice or recommendations concerning the formulation of any public policy or legislation . . . ." RSA 91-A:1-a, I (emphasis added). Because the TRG, as a committee, does not provide such advice or recommendations, it is not an advisory committee.

As the city points out, even if the TRG were to be dissolved, its work would still take place by way of a more burdensome process involving a series of individual meetings between applicants and municipal department officials. The city further observes, and the plaintiff does not dispute, that those individual meetings would not be subject to the Right-to-Know Law's open-meeting requirement. Nevertheless, the plaintiff argues that streamlining this process by gathering the municipal officials and the applicant in the same room triggers the open-meeting requirement. See RSA 91-A:2, II. In illustration of his position, the plaintiff contends that the TRG is no different from the industrial advisory committee that we concluded was subject to the Right-to-Know Law in Bradbury v. Shaw, 116 N.H. 388, 389-90 (1976). He contends that both the TRG and the committee in Bradbury "merely gathered and disseminated information to get it ready for submission . . . in a more efficient way," and that the industrial advisory committee did not have "any more influence on decisions of the mayor or city council than the TRG has on the Planning Board."

We disagree with the plaintiff's characterization of the committee in Bradbury. The Bradbury committee considered matters of policy, including the extension of city water and sewer lines and the construction of new streets, and advised the mayor — the committee's appointing authority — on the sale of city-owned land. Bradbury, 116 N.H. at 389-90. Indeed, the mayor submitted one proposal for the sale of city-owned land to the city council with a statement that the committee had approved it. Id. at 389. On that record, we concluded that "the trial court properly found that the committee's involvement in governmental programs and decisions brought it within the scope of the right-to-know law." Id. at 390. By contrast, the TRG, as the trial court explained, "is not constituted to advise or make recommendations concerning formulation of public policy or legislation." Rather, the TRG members consider land use applications and apprise each applicant of the concerns of particular municipal departments that are represented by members of the TRG. This process is meant to assist the applicants in preparing their applications for presentation

6

to the planning board.  The TRG simply is not involved in "governmental programs and decisions" as was the committee in <u>Bradbury</u>.  <u>Id</u>.

Therefore, we conclude that the TRG is neither an "advisory committee" nor a "public body," as defined by RSA 91-A:1-a, I, and RSA 91-A:1-a, VI(d), respectively.  Accordingly, meetings of the TRG are not subject to the open-meeting requirement contained in RSA 91-A:2, II.

### B.  City Copy Fee Schedule

Next, the plaintiff argues that the trial court erred in concluding that the fees assessed by the city for providing photocopies of public records are commensurate with the actual costs of producing a photocopy, as required by RSA 91-A:4, IV.  That provision provides, in part, that:

> If a computer, photocopying machine, or other device maintained for use by a public body or agency is used by the public body or agency to copy the governmental record requested, the person requesting the copy may be charged the actual cost of providing the copy, which cost may be collected by the public body or agency.

The plaintiff contends that, in drawing its conclusion, the trial court either relied on evidence that does not support its conclusion, or misapplied RSA 91-A:4, IV by failing to conduct a formulaic numeric analysis to determine the city's "actual cost" of providing a photocopy.  Based upon the plaintiff's calculations, he maintains that the trial court could not have properly concluded that a rate higher than approximately four cents per page complies with the requirements of the Right-to-Know Law.

When a trial court renders a decision after a trial on the merits, we uphold its factual findings and rulings unless they lack evidentiary support or are legally erroneous.  <u>Vention Med. Advanced Components v. Pappas</u>, 171 N.H. 13, 28 (2018).  We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. <u>Marist Bros. of N.H. v. Town of Effingham</u>, 171 N.H. 305, 309 (2018).  Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence.  <u>Id</u>.  Nevertheless, we review the trial court's application of the law to the facts <u>de</u> <u>novo</u>.  <u>Id</u>.

We note that, in RSA 91-A:4, IV, the legislature did not mandate use of a formulaic method for determining "actual cost" and we decline the plaintiff's invitation to impose a requirement that the legislature did not see fit to include. <u>See</u> <u>Petition of Malisos</u>, 166 N.H. 726, 729 (2014) ("We . . . will not consider

what the legislature might have said or add language that the legislature did not see fit to include."). Therefore, contrary to the plaintiff's assertion, to prove that the city's copy fee schedule complied with RSA 91-A:4, IV, the city was not obligated to proffer either specific numbers in support of its rate, or the city budget.

At trial, the court received evidence of copy fee schedules[2] from other municipalities. In addition, the city manager testified to the costs of producing a photocopy that are considered when establishing the fee schedule, including the cost of leasing copy machines, maintenance, capital costs on the machines, and the cost of paper. Further, the city manager testified that the fee schedule is based upon the actual cost of copying, and not the labor associated with making the copies. The trial court found that the city's fee schedule is "commensurate with 'the actual cost of providing the copy,' . . . as evidenced by testimony of City officials and by comparison with other fees assessed in comparable municipalities across the state." On the record before us, we conclude that the evidence presented to the trial court was sufficient such that a reasonable person could draw the same conclusion that the court did.

### III. Conclusion

We affirm the trial court's ruling that TRG meetings are not subject to the open-meeting requirement contained in RSA 91-A:2, and that the city's copy fee schedule is commensurate with the "actual cost" of producing photocopies, as required by RSA 91-A:4, IV.

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

---

[2] Based upon that evidence, the trial court found that "Derry charges twenty-five cents per page for a photocopy; Dover charges fifty cents per page; Portsmouth charges two dollars for the first page and fifty cents thereafter; Somersworth charges ten dollars for up to ten pages and any page beyond that is one dollar per page; Claremont charges twenty-five cents to one dollar per page depending on the paper size; Nashua charges seventy-five cents for the first page and ten cents per page after that; Laconia charges one dollar per page; and Manchester charges one dollar for the first copy and fifty cents for each additional copy."