**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2021-0473, <u>Appeal of Town of Windham</u>, the court on October 4, 2022, issued the following order:**

Having considered the parties' briefs, oral arguments, and the record on appeal, we conclude that a formal written opinion is unnecessary in this case. The petitioner, Town of Windham (Town), appeals an order of the Housing Appeals Board (HAB) vacating and remanding a decision by the Town's planning board. The decision denied the request of the respondent, Ten Harris Road, LLC, for a waiver of the workforce housing requirement set forth in the Town's zoning ordinance. The Town argues that the HAB erred by vacating and remanding the decision to the board with instructions to address an appropriate percentage of workforce housing for the proposed project. We conclude that the HAB reasonably vacated the board's denial of the waiver request. However, we decline to review whether the HAB acted unlawfully or otherwise exceeded the scope of its authority by remanding the matter with instructions because the Town has not preserved that issue for our review and the respondent has not appealed it. Accordingly, we affirm.

The following facts are supported by the record or are otherwise undisputed. The respondent owns property located in the Town's rural zoning district. The property is approximately six acres and is improved by a single-family residence. The respondent seeks to redevelop the property with a multi-unit condominium complex comprised of a mix of workforce and market-rate housing. In September 2020, the respondent submitted a site plan application to the board proposing to develop sixteen single-family condominiums, which, together with the existing single-family house, would result in seventeen total units on the property. The respondent submitted the site plan application as a workforce housing project under the Town's zoning ordinance, which authorizes the development of workforce housing in the rural district under certain circumstances. <u>See</u> <u>Windham, N.H., Zoning Ordinance</u> § 619.3 (2020).

Relevant to the respondent's site plan application, the Town's ordinance requires that, for any workforce housing project in the rural district, at least 50 percent of the units "must qualify as workforce housing." <u>Windham, N.H., Zoning Ordinance</u> § 619.7.3.3 (2020); <u>see also</u> RSA 674:58, IV (2016) (defining "workforce housing"). The ordinance provides that, "[i]f this percentage creates a financial burden and makes the development not financially viable, a waiver can be sought from the [board] to reduce this percentage." <u>Windham, N.H., Zoning Ordinance</u> § 619.7.3.3 (2020). It further states that any "request for a

waiver must be accompanied by financial documentation justifying such waiver request." Id.

In its site plan application, the respondent proposed that four of the seventeen units — or 23.5 percent of the total development — qualify as workforce housing. Accordingly, the respondent requested a waiver of the 50 percent workforce housing requirement set forth in the Town's ordinance. See id. In support of its request, the respondent submitted a workforce feasibility analysis from an independent engineering firm, which concluded that developing 50 percent of the units as workforce housing would not be financially feasible and would likely generate a financial loss of approximately $130,000. The firm further concluded that a 25 percent rate would generate "a positive bottom line."[1] In its application to the board, the respondent also submitted a letter from a municipal planner citing the need for workforce housing in Windham and explaining that 25 percent was within the "norm" of workforce housing required by other communities in the state.

Between December 2020 and February 2021, the board conducted a series of hearings and a site walk at which it discussed, among other things, the respondent's site plan application and accompanying waiver request. During the hearings, board members expressed their disagreement with the financial data set forth in the respondent's workforce feasibility analysis submitted as part of its application. The board also took issue with the respondent's failure to identify other variations at different percentages for the feasibility of the project. The board did not retain a financial expert to review the respondent's workforce feasibility analysis, but, rather, requested that the Town's engineer review the report. Following his review, the engineer agreed with the report's conclusion that if the respondent is required to satisfy the 50 percent requirement the proposed development would not be financially feasible.

Ultimately, the board denied the respondent's waiver request, concluding, inter alia, that the respondent's financial information did not support the request. Thereafter, the respondent appealed to the HAB, arguing that the board's decision to deny the waiver request was unlawful and unreasonable. Specifically, the respondent argued, in part, that the board erred by relying upon its own "personal knowledge" in rejecting the conclusions set forth in the workforce feasibility analysis and determining that the reports submitted by the respondent did not support granting the workforce housing waiver.

In July 2021, the HAB issued an order vacating and remanding the board's decision. The HAB determined that the reports submitted by the

---

[1] The 25% workforce housing rate was calculated based upon the proposed plan's development of 16 new units, as opposed to 17 units which included the existing building on the property.

2

respondent, as well as the Town engineer's review, demonstrated "that at 50 percent the project would not be economically viable." Further, the HAB determined that the board's members unreasonably disregarded the findings of the reports submitted in support of the application based upon their own personal knowledge. Accordingly, the HAB concluded that the board's decision to deny the respondent's waiver request for a workforce housing percentage reduction was unreasonable and inconsistent with RSA 674:58, III and the Town's ordinance. The HAB vacated the board's denial of the waiver and remanded the matter to the board with specific instructions that the board "reconsider an appropriate workforce housing percentage" in light of both RSA 674:58 and the Town's workforce housing ordinance.

The Town moved for rehearing, arguing that the HAB's decision to remand with specific instructions to address the issue of the appropriate percentage of workforce housing was unlawful because the planning board does not have authority to propose particular workforce housing percentages as instructed by the HAB. Rather, in its view, the board may only reject or accept percentages that the applicant has proposed. The HAB denied the Town's request for rehearing, finding that "[t]he Certified Record makes clear that the 50% requirement could not be economically met and, rather than investigate, adapt, recommend, or discuss a reasonable workforce housing percentage . . ., the Town balked even after indicating that a lesser percentage was probably needed." This appeal followed.

When reviewing a planning board's decision, the HAB must uphold the decision unless there was an error of law or the HAB is persuaded by the balance of probabilities that the decision was unreasonable. See RSA 677:6, :15, V (2016); RSA 679:9, II (Supp. 2021); see also RSA 679:9, I (Supp. 2021) ("Appeals to the [HAB] shall be consistent with appeals to the superior court pursuant to RSA 677:4 through RSA 677:16."). The party seeking to set aside the board's decision bears the burden of proving that the decision was unlawful or unreasonable. RSA 677:6; see RSA 679:9, I. The HAB must treat the planning board's factual findings as prima facie lawful and reasonable. See Trustees of Dartmouth Coll. v. Town of Hanover, 171 N.H. 497, 504 (2018); see also RSA 677:6; RSA 679:9, I. The HAB's review is not to determine whether it agrees with the planning board's findings, but, rather, whether there is evidence in the record upon which the planning board could have reasonably based its findings. See Trustees of Dartmouth Coll., 171 N.H. at 504.

Our review of the HAB's decision is governed by RSA chapter 541. See RSA 679:15 (Supp. 2021) ("Decisions of the [HAB] may be appealed to the supreme court by any party in accordance with the provisions of RSA 541 as from time to time amended."). We will not set aside the HAB's order unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. See RSA 541:13 (2021).

3

On appeal, the Town argues that the HAB erred by vacating and remanding the board's decision to deny the respondent's request to waive the workforce housing requirement. Resolving this issue requires that we interpret the language of the Town's ordinance. The interpretation of an ordinance presents a question of law, which we review de novo. Town of Carroll v. Rines, 164 N.H. 523, 526 (2013). We construe the words and phrases of an ordinance according to the common and approved usage of the language. Id. When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. Id.

As an initial matter, in its written order, the HAB concluded "that at 50 percent the project would not be economically viable." We conclude that the HAB's determination was neither unjust nor unreasonable. The workforce feasibility analysis submitted by the respondent in support of the waiver request concluded that at a rate of 50 percent workforce housing the project would result in a financial loss of approximately $130,000. At the request of the board, the Town's consulting engineer reviewed the workforce feasibility analysis and opined that "the analysis effectively demonstrates [a] lack of economic viability" if the development is subject to the 50 percent workforce housing rate. The record does not include evidence that any members of the board were so qualified to disregard the findings of both the workforce feasibility analysis and the opinion of the Town's consulting engineer. Indeed, on appeal the Town appears to concede that the respondent satisfied its burden of establishing that a 50 percent workforce housing rate was not financially viable, stating "there appeared [to be] support [from the board] for some number less than the 50% required."

Nevertheless, the Town argues that the respondent failed to establish that 23.5 percent workforce housing — the percentage the respondent requested — was warranted under the circumstances. In the Town's view, under the ordinance an applicant bears the burden of demonstrating that its requested percentage is warranted, and, if an applicant fails to satisfy that burden, the board may deny the waiver request on that basis. The Town posits that, in the event the board rejects the proposed percentage, it is under no duty to "construct" or discuss an acceptable alternative. Consequently, the Town argues that the HAB misconstrued the ordinance in vacating the planning board's denial of the waiver request and remanding the matter to the board with instructions which, in the Town's view, mandates that the board "determine" the appropriate percentage of workforce housing.[2]

---

[2] Contrary to the Town's argument, the HAB did not instruct the board to sua sponte "determine" the appropriate workforce housing percentage for the respondent's project. Rather, the HAB instructed the board to engage with the respondent and investigate, recommend or discuss a reasonable workforce housing percentage.

4

Assuming without deciding that the record does not support the respondent's proposed 23.5 percent workforce housing request, we are unpersuaded by the Town's argument and conclude that the HAB acted lawfully. The ordinance states, in relevant part: "If [the 50 percent threshold] creates a financial burden and makes the development not financially viable, a waiver can be sought from the [board] to reduce this percentage. The request for a waiver must be accompanied by financial documentation justifying such waiver request." Windham, N.H., Zoning Ordinance § 619.7.3.3 (2020).

When read in isolation, the language of this ordinance could be interpreted as placing the burden of identifying an appropriate workforce housing percentage below 50 percent solely upon the applicant seeking a waiver of the workforce housing requirement. See id. However, such an interpretation of the ordinance's language would produce an absurd result. See Appeal of Morton, 158 N.H. 76, 82 (2008) ("We cannot interpret the applicable rules and statutes to require such an absurd result."). Specifically, such an interpretation would require an applicant to submit a new application requesting a different percentage of workforce housing each time the board decides that the requested percentage is inappropriate or unwarranted under the circumstances. Meanwhile, the board would have no obligation to engage with the applicant or discuss a mutually acceptable percentage. Nor would the applicant have the benefit of the board's views on the project before it submitted its next waiver request. This result would impose an onerous burden on applicants in both time and financial resources, while relieving the board of any obligation to express its views on what it might find appropriate for the project under the circumstances.

Such a result would contravene the legislature's clear intent of encouraging the development of workforce housing throughout the state. See RSA 672:1, III(e) (Supp. 2021). Indeed, the Town's interpretation of the ordinance is in direct tension with the legislature's mandate that the "[o]pportunity for development of [workforce housing] shall not be prohibited or unreasonably discouraged by use of municipal planning and zoning powers or by unreasonable interpretation of such powers." Id. (emphasis added); see also RSA 674:59, I ("In every municipality that exercises the power to adopt land use ordinances and regulations, such ordinances and regulations shall provide reasonable and realistic opportunities for the development of workforce housing . . . .").

Moreover, to accept the Town's interpretation of the ordinance would permit the board to engage in dilatory tactics that would contravene its duty to assist citizens in the application process. See Richmond Co. v. City of Concord, 149 N.H. 312, 315 (2003) (noting that a planning board's duty to provide assistance to all its citizens is "aimed at preventing municipalities from ignoring an application or otherwise engaging in dilatory tactics in order to delay a project"). We therefore conclude that in light of the legislature's

mandate in RSA 672:1, III(e) and the board's duty to assist applicants, the HAB properly determined that the board erred by "completely denying the [respondent's] request for workforce housing percentage reduction" and, as a result, remanding the matter to the board.

In further support of its argument that the applicant — not the board — bears the sole burden of identifying an appropriate workforce housing percentage, the Town cites Cherry v. Town of Hampton Falls, 150 N.H. 720 (2004). In that case, the applicants requested a special use permit to construct a road within a wetland buffer area. Id. at 721. At the end of the hearing, the board requested that the applicants reconsider the proposal to address the scope of the wetland impact. Id. at 722. The applicants declined the request, stating that the current plan presented the most viable option. Id. The planning board denied the application because the applicants did not include a feasible alternative to the proposed wetland impact. Id. The superior court reversed the planning board and concluded that the applicants' proposal did not need to be perfect, just reasonable. Id. at 723. We reversed the superior court and held that the planning board did not err by requiring the applicant to propose a reasonable alternative. Id. at 724.

The Town argues that Cherry "governs this matter" and supports the proposition that a planning board is not obligated to construct "its own version of an application that was not before it." In the Town's view, our holding in Cherry mandates that "when an applicant fails to satisfy underlying criteria for approval, the appropriate action is to deny the application and require the applicant to submit a new proposal which satisfies the criteria for approval." We disagree. Our holding in Cherry is distinguishable. First, the planning board in Cherry actively engaged with the developer by requesting an alternative road design that addressed the board's concerns for the project's wetland impact. Id. at 722. Second, the board's decision in that case involved the scope of a wetland impact, id. at 722-24, whereas here the board's decision concerned the development of workforce housing. Thus, even if we were to credit the Town's reading of our holding in Cherry, that case is inapplicable to our analysis here because the approval sought in Cherry did not include the legislature's specific protections for the development of workforce housing previously discussed. See RSA 672:1, III(e). Accordingly, we decline to extend our holding in Cherry to these circumstances and conclude that the HAB's decision vacating the board's denial of the waiver request is neither unjust nor unreasonable.

In the alternative, the Town argues that the HAB erred by exceeding the scope of its review beyond its statutory authority in RSA 679:9 by remanding with specific instructions. The Town acknowledges that it did not raise this issue in its motion for rehearing. See RSA 541:4 ("[N]o ground not set forth [in a motion for rehearing] shall be urged, relied on, or given any consideration by the court, unless the court for good cause shown shall allow the appellant to

specify additional grounds.").  Nevertheless, the Town argues that its argument is preserved for our review because the question as to whether the HAB exceeded the scope of its review concerns subject matter jurisdiction, which may be raised at any time.  See State v. Demesmin, 159 N.H. 595, 597 (2010).[3]

We disagree.  "Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought."  In re Guardianship of K.B., 172 N.H. 646, 648 (2019) (addressing the circuit court's jurisdiction to modify another state's child-custody determination).  Here, the Town does not argue to the contrary — nor can it be disputed — that the HAB is vested with subject matter jurisdiction to adjudicate the respondent's appeal from the board's decision denying approval for a workforce housing development.  See RSA 679:5, I(a).  Accordingly, the HAB's decision to remand the case does not present a question of subject matter jurisdiction.  Because, as the Town concedes, it did not raise the issue in its motion for rehearing, we decline to consider its argument that the HAB's order exceeded the scope of its review.  See RSA 541:4.

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

---

[3] The Town also contends that it could not argue the HAB exceeded the scope of its review in its motion for rehearing because "the issue was not apparent until the Ruling on Rehearing was entered."  We reject this argument because the HAB's order on the motion for rehearing had no bearing upon whether the HAB exceeded the scope of its review in its original order.  Simply put, we conclude that nothing precluded the Town from raising the issue in its motion for rehearing.