NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Sullivan
Case No. 2023-0083
Citation: Stone v. City of Claremont, 2024 N.H. 11


JONATHAN STONE

v.

CITY OF CLAREMONT

Argued: November 14, 2023
Opinion Issued: March 20, 2024


Decato Law Office, of Lebanon (R. Peter Decato on the brief and orally), for the plaintiff.


Drummond Woodsum & MacMahon, of Manchester (Shawn M. Tanguay on the memorandum of law), for the defendant.


American Civil Liberties Union of New Hampshire, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the brief, and Gilles R. Bissonnette orally), and Malloy & Sullivan, Lawyers Professional Corporation, of Hingham, Massachusetts (Gregory V. Sullivan on the brief), for the intervenors.

DONOVAN, J.

[¶1] In June 2020, the defendant, the City of Claremont, received a request under RSA chapter 91-A for the disclosure of governmental records related to the plaintiff, Jonathan Stone. The plaintiff appeals a decision from the Superior Court (Honigberg, J.) denying his petition for injunctive relief and ordering the City to disclose thirteen internal affairs investigation reports (IA Reports) and four sets of correspondence between the New Hampshire Police Standards and Training Council (PSTC) and the City. The plaintiff argues that: (1) the City violated a 2007 Stipulated Award when the City Manager sent a letter to a New Hampshire journalist responding to the journalist's request for certain government records; (2) the City Manager's letter incorrectly indicated the number of sustained reports that the City located pertaining to the plaintiff; (3) the City violated the Stipulated Award when it did not destroy certain IA Reports; and (4) some of the requested IA Reports should not be released because they did not result in any findings or conclusions.

[¶2] The City argues that "[t]he majority of [the plaintiff's] case must fail" because: (1) the Stipulated Award does not protect the requested records from disclosure; and (2) all but two of the requested IA Reports are subject to public disclosure pursuant to the balancing test set forth in Union Leader Corp. v. Town of Salem, 173 N.H. 345 (2020). See RSA 91-A:5, IV (2023). The City, however, disagrees with the trial court's ruling that IA Reports Nos. 13 and 14 should be disclosed and instead argues that these two reports should not be publicly disclosed because the plaintiff's privacy interests outweigh the public's interest in these two governmental records. The intervenors, American Civil Liberties Union of New Hampshire and Union Leader Corporation, argue that: (1) the Stipulated Award does not prevent disclosure of the requested records; (2) the plaintiff waived any argument that any of the exemptions set forth in RSA chapter 91-A (2023 & Supp. 2023) apply; (3) if the plaintiff did not waive such argument, he lacks standing to challenge the disclosure of documents under RSA chapter 91-A; and (4) if the plaintiff has standing to challenge such disclosure, the records are not exempt from disclosure under RSA 91-A:5, IV.

[¶3] We conclude that: (1) the 2007 Stipulated Award does not prohibit disclosure of the requested records; and (2) the plaintiff waived any argument that the records would otherwise be exempt from disclosure under RSA 91-A:5, IV. Accordingly, we affirm.

I.  Facts

[¶4] The following facts are agreed upon by the parties or otherwise taken from documents in the record. The plaintiff is a former police officer with the Claremont Police Department (CPD) and a current public official. In June 2007, the plaintiff, through his union, entered into a Stipulated Award with the City that resolved four grievances that the plaintiff filed in response to several

IA Reports. As part of the Stipulated Award, the City agreed to "purge [the plaintiff's] personnel file of all reference to the one-day suspension of March 8, 2006, the March 27, 2006 notice of termination, and all events leading up to them." The parties agreed not to report the disposition of the matter to the newspaper or any other media outlet and, if contacted by the media, to make no comment. The Award also contained a confidentiality provision in which the parties agreed "to keep the existence, terms, and substance of this Award confidential . . . except to the extent required by an order of some other agency, court of competent jurisdiction, or by law." The Stipulated Award resulted in the plaintiff's negotiated resignation from the CPD.

[¶5] In June 2020, a journalist sought the disclosure of governmental records related to the plaintiff under New Hampshire's Right-to-Know Law. See RSA ch. 91-A. The journalist requested: (1) copies of any internal investigative reports into the conduct of the plaintiff as a CPD officer; (2) copies of any written communications to the plaintiff from the Claremont Police administration regarding his termination; (3) copies of any documents or statements sent to the PSTC regarding the plaintiff's "moral turpitude"; and (4) copies of any statements that the CPD received from the PSTC regarding the plaintiff.

[¶6] The following month, the City filed a Complaint in Equity for Declaratory Judgment and named the plaintiff and the journalist as co-respondents. In its complaint, the City explained that following the journalist's request, it analyzed the potential public disclosure of the requested documents pursuant to the balancing test set forth in Town of Salem, 173 N.H. 345. See RSA 91-A:5, IV. The City averred that under this standard, the requested disclosure implicated both the plaintiff's significant privacy interest, as well as a substantial public interest, and it acknowledged that the plaintiff would likely object to the disclosure of these documents based upon his privacy interest. The City sought the court's guidance as to which governmental records are subject to public disclosure.

[¶7] In August, the Superior Court (Tucker, J.) dismissed the City's complaint without prejudice. The court ordered the City to act upon the journalist's request pursuant to RSA 91-A:4, IV(a)-(c) (2023) and explained that:

> if the City determines a record does not fall within a recognized exemption and should be released, it may notify counsel for the [plaintiff] prior to disclosing it to the requesting party, in order to give the [plaintiff] a brief period of time to decide whether to seek an injunction.

Later that month, the City Manager sent the letter to the journalist responding to his governmental records request.

[¶8] In September, the plaintiff commenced the instant case by petitioning for injunctive relief. Specifically, the plaintiff asked the court to enter an injunction preventing the City from disclosing any of the requested records, arguing that an injunction was necessary given the terms of the Stipulated Award. He argued that, due to his current role as a Claremont City Councilor and his candidacy for a seat in the New Hampshire Legislature, public disclosure of the records would cause him to suffer irreparable harm. In October, the intervenors sent separate Right-to-Know requests to the CPD seeking disclosure of certain governmental records relating to the plaintiff. Following these requests, the intervenors filed a Joint Statement of Interest in the plaintiff's case and moved to intervene. The intervenors argued that the requested records should be disclosed because the public interest in disclosure outweighs any privacy interest in nondisclosure, and the Stipulated Award "has no impact on the Right-to-Know Law analysis." See Prof'l Firefighters of N.H. v. Local Gov't Ctr., 159 N.H. 699, 707 (2010) (explaining the balancing test used to determine whether disclosure of public records constitutes an invasion of privacy under RSA 91-A:5, IV); see also RSA 91-A:5, IV. The superior court subsequently granted the motion to intervene.

[¶9] The Superior Court (Tucker, J.) issued an order in December 2021 denying the plaintiff's request for a preliminary injunction. The court concluded that enforcement of the confidentiality provision in the 2007 Stipulated Award would run counter to public policy reflected in RSA chapter 91-A, but it left open the question of whether any of the records were exempt from disclosure pursuant to RSA 91-A:5, IV. The court also granted the intervenors access to the records responsive to the pending Right-to-Know request as well as unredacted versions of sealed pleadings, subject to a protective order.

[¶10] In June 2022, the City produced responsive records to the superior court (under seal) and the parties (under protective order) so that the intervenors and the court could better understand the records in dispute and the applicability of RSA 91-A:5, IV. Specifically, the City produced both clean and redacted versions of fifteen IA Reports and four sets of correspondence between the PSTC and the Chief of Police for the CPD. The City proposed that IA Reports Nos. 1 through 10 and 10A and the four sets of PSTC correspondence be released with little or no redactions, which the intervenors accepted. The City, however, argued against disclosing IA Reports Nos. 11 through 14. In response, the intervenors withdrew without prejudice their request for IA Reports Nos. 11 and 12, but they continued to argue for the release of IA Reports Nos. 13 and 14. Other than the fourth set of PSTC correspondence that the plaintiff agreed could be disclosed, the plaintiff maintained that all of the documents that the City produced should be withheld.

4

[¶11] In October 2022, the Superior Court (Honigberg, J.) denied the plaintiff's motion for an injunction and ordered the disclosure of the thirteen IA Reports and the four sets of PSTC correspondence. The trial court determined that the confidentiality provision, as well as the purging provision, of the Stipulated Award are unenforceable because they are contrary to the public policy reflected by RSA chapter 91-A. The trial court then considered whether the records were nevertheless exempt from disclosure by RSA 91-A:5, IV and concluded that "the Plaintiff's privacy interest is not weighty," and that the "public's interest in disclosure, however, weighs heavily." The court ordered the City to provide the intervenors with IA Reports Nos. 1 through 10 and 10A, as well as all four sets of the PSTC correspondence with the agreed-upon redactions. The court also ordered the City to provide the intervenors and the plaintiff with IA Reports Nos. 13 and 14 and the parties to "negotiate in good faith to see if they can reach an agreement on the redactions." In a January 2023 order, the court reaffirmed its October 2022 order and resolved the parties' remaining disagreements regarding redactions to IA Reports Nos. 13 and 14. This appeal followed.

## II. Analysis

[¶12] At issue on appeal is the disclosure of governmental records regarding the plaintiff during his time as a police officer in the CPD — specifically, IA Reports Nos. 1 through 10, 10A, 13 and 14, and three sets of PSTC correspondence.[1] The plaintiff argues for the enforcement of the Stipulated Award and contends that it prohibits the disclosure of any records that it covers. Accordingly, we begin by considering whether the 2007 Stipulated Award protects any of the requested records from disclosure.[2] Because the interpretation of a contract is ultimately a question of law for us to decide, we review the trial court's interpretation of that agreement de novo. Town of Pembroke v. Town of Allenstown, 171 N.H. 65, 69 (2018). When interpreting a written agreement, we read the document as a whole and give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated. Id. at 70. Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the agreement. Monadnock Reg'l Sch. Dist. v. Monadnock Dist. Educ. Ass'n, 173 N.H. 411, 420 (2020).

---

[1] Because the plaintiff has agreed to the disclosure of the fourth set of PSTC correspondence and the intervenors withdrew without prejudice their request for IA Reports Nos. 11 and 12, we do not consider the disclosure of these records in this opinion.

[2] The plaintiff and the intervenors agree that the Stipulated Award covers IA Reports Nos. 8, 10, 10A, 13, and 14, but not IA Reports Nos. 1-7. Whether IA Report No. 9 is covered by the Stipulated Award is unclear, but the intervenors suggest that it is.

[¶13] The Stipulated Award provides, in relevant part:

4.    Confidential.  Both parties and their agents/representatives agree to keep the existence, terms, and substance of this Award confidential other than to say, if asked, that the matter has been resolved, except to the extent required by an order of some other agency, court of competent jurisdiction, or by law.

5.    Personnel File.  The City shall purge [the plaintiff's] personnel file of all reference to the one-day suspension of March 8, 2006, the March 27, 2006 notice of termination, and all events leading up to them[.]

[¶14] The plaintiff argues that the confidentiality and the purging provisions of the Stipulated Award prohibit the disclosure of any of the records that the Stipulated Award covers.  Regarding the purging provision, the plaintiff explains that he believed that the relevant documents could be maintained only within his personnel file, and that "[i]f the City was going to purge one file to put the material in another file, they should have informed the union and [the plaintiff]."  The intervenors contend that the purging provision of the Stipulated Award does not state that the relevant records will be destroyed or that they will cease to exist within the CPD.  According to the intervenors, the Stipulated Award provides only that the relevant records will be purged from the plaintiff's personnel file but does not state that the records will be purged from all other locations.  Similarly, the intervenors argue that the confidentiality provision "does not provide the blanket confidentiality that [the plaintiff] asserts."  Rather, the Stipulated Award "makes clear that its confidentiality provision applies 'except to the extent required by . . . law,' which includes the requirements of RSA ch. 91-A."  We agree with the intervenors.

[¶15] Although the confidentiality provision provides that the "parties and their agents/representatives agree to keep the existence, terms, and substance of this Award confidential," any such confidentiality is qualified.  Indeed, the provision expressly provides that the "parties and their agents/representatives" shall keep the "existence, terms, and substance of this Award confidential . . . except to the extent required by an order of some other agency, court of competent jurisdiction, or by law."  (Emphases added.)  Thus, the Stipulated Award does not mandate wholesale confidentiality.  Rather, it demonstrates the parties' recognition that the law could change over time and that the confidentiality provision would not prevent disclosure of the relevant records if such disclosure is required by law.  Accordingly, we conclude that the confidentiality provision of the Stipulated Award does not prevent the City from disclosing the relevant records in question if such disclosure is otherwise required by law.  Here, the trial court concluded, and the plaintiff does not dispute, that all of the required records are subject to disclosure under RSA 91-A:4, I.

6

[¶16] Similarly, the purging provision does not mandate wholesale destruction of the records in question but, rather, only requires the City to "purge [the plaintiff's] personnel file of all reference" to two specific incidents and the events leading up to them. (Emphasis added.) Thus, the City did not violate the Stipulated Award when it purged the records in question from the plaintiff's personnel file but did not destroy them.

[¶17] On appeal, the plaintiff's arguments are entirely premised upon whether the terms of the 2007 Stipulated Award prohibit the release of the requested records. Indeed, the plaintiff did not raise in his notice of appeal, nor did he fully brief, whether the records are exempt from disclosure under RSA 91-A:5, IV. See State v. Blackmer, 149 N.H. 47, 49 (2003) (declining to review any issue that is not "fully briefed" or "is not raised in a party's notice of appeal"). Moreover, the plaintiff expressly waived any RSA chapter 91-A claims at oral argument. See State v. Bonalumi, 127 N.H. 485, 489 (1985) (an issue waived at oral argument need not be considered by this court). Accordingly, we do not disturb the trial court's decision regarding the disclosure of the requested records under RSA chapter 91-A.[3] Given our conclusion that the plaintiff waived all RSA chapter 91-A claims, we need not consider the intervenors' argument that the plaintiff lacks standing to bring a claim under RSA chapter 91-A.

[¶18] Lastly, we address the plaintiff's remaining two arguments regarding the City Manager's August 2020 letter to the journalist. The plaintiff argues that this letter violated the provision of the Stipulated Award that states "[t]he parties agree that the disposition of this matter shall not be reported to the newspaper or any other media outlet. If contacted by the media, the parties will make no comment." The plaintiff also contends that in this letter, the City Manager incorrectly indicated the number of sustained reports that the City located. Even if the plaintiff is correct that this letter violated the aforementioned provision of the Stipulated Award and that the City Manager incorrectly indicated the number of sustained reports that the City located, we fail to see how such a conclusion impacts whether the requested records can be disclosed pursuant to the Stipulated Award or RSA chapter 91-A. Accordingly, we decline to consider the merits of these arguments.

---

[3] Although the City, for the most part, agrees with the intervenors and the trial court, it argues that the trial court erred in ordering the disclosure of IA Reports Nos. 13 and 14 under RSA chapter 91-A. The City argues that the question of whether IA Reports Nos. 13 and 14 should be disclosed under RSA chapter 91-A "is properly preserved for appellate review" because the plaintiff raised the question in his notice of appeal and briefed the issue in his opening brief. We disagree, and because we have concluded that the plaintiff neither raised this issue in his notice of appeal nor fully briefed it, and that he waived all RSA chapter 91-A claims at oral argument, we decline to consider this issue on appeal.

7

### III.  Conclusion

[¶19] In summary, we conclude that the 2007 Stipulated Award does not protect the requested records at issue on appeal from disclosure.  We also conclude that the plaintiff waived any argument that the requested records are exempt from disclosure pursuant to RSA 91-A:5, IV, and, therefore, we do not disturb the trial court's order that all documents at issue in this case shall be disclosed, subject to certain redactions.  Given that we do not consider whether the requested records are exempt from disclosure pursuant to RSA 91-A:5, IV, the intervenors' outstanding motion to strike the portions of the City's memorandum of law that argue in favor of exempting IA Reports Nos. 13 and 14 from disclosure under RSA 91-A:5, IV is moot.

<u>Affirmed</u>.

MACDONALD, C.J., and BASSETT J., concurred; HANTZ MARCONI, J., concurred in the result.

HANTZ MARCONI, J., concurring in the result.

[¶20] I continue to be concerned with the effect of our overruling Union Leader Corp. v. Fenniman, 136 N.H. 624 (1993), as I expressed in my dissent in Union Leader Corp. v. Town of Salem, 173 N.H. 345, 358-62 (2020) (Hantz Marconi, J., dissenting).  As we noted in American Civil Liberties Union of New Hampshire v. New Hampshire Division of State Police, our interpretation of the exemptions set forth in RSA 91-A:5, IV (2023) has impacted the treatment of law enforcement records in various ways.  See Am. Civil Liberties Union of N.H. v. N.H. Div. of State Police, 176 N.H. ___, ___ (decided Nov. 29, 2023) (slip op. at 9).  Records impacted include: (i) records relating to an adverse employment action against a former state trooper, id. at ___ (slip op. at 2); (ii) an investigative report of a motor vehicle stop conducted by an officer no longer with the employing department, Provenza v. Town of Canaan, 175 N.H. 121, 122-23 (2022); (iii) an audit report of a police department, Union Leader Corp. v. Town of Salem, 173 N.H. at 348; and (iv) an arbitration decision concerning the termination of a police officer, Seacoast Newspapers, Inc. v. City of Portsmouth, 173 N.H. 325, 329 (2020).  We have also considered the juxtaposition of the Right-to-Know Law with the statute governing access to police personnel files by a criminal defendant.  See Am. Civil Liberties Union of N.H., 176 N.H. at ___, (slip op. at 3-9); see also Petition of State of N.H. (State v. Fuchs), 174 N.H. 785, 788-95 (2022) (maintaining confidentiality of records disclosed in a criminal case).  In this case, we are asked to address confidentiality provisions in a bargained-for settlement agreement that became unsettled by our decision overturning 26 years of precedent.

[¶21] I am concerned that the majority's opinion takes an incremental step, under the facts of this case, to preclude the use of confidential

settlements by governmental entities. Such agreements can serve an important purpose, and our developing RSA 91-A jurisprudence, along with other record retention policies, may reduce or eliminate the availability of this device. Restrictions on confidential settlement agreements with respect to public employees, and in particular, law enforcement officers, raise policy considerations beyond the outcome of this case. The federal government, for example, in 2022 reversed a 2020 ban on "clean-record agreements," reasoning that agencies should have them as an option to resolve employment disputes "in a manner that balances the needs of the agency and fairness to the employee." Probation on Initial Appointment to a Competitive Position, Performance-Based Reduction In Grade and Removal Actions and Adverse Actions, 87 Fed. Reg. 67765, 67772-73 (Nov. 10, 2022). The United States Office of Personnel Management has noted that such agreements can "resolve workplace disputes at an early stage and with minimal costs" and "minimiz[e] the burden of the substantial cost of litigation." Id. at 67773. Police officers, in particular, now also face the public disclosure of employment matters that involve potentially exculpatory evidence. See RSA 105:13-d, I (2023). Considering these developments, the legislature may want to examine the records exempted pursuant to RSA 91-A:5, IV.[4]

[¶22] I also do not think that the language in the agreement — "except to the extent required . . . by law" — provides fair notice that a reinterpretation of the Right-to-Know Law, not an amendment thereto, could undo an agreement reached years prior, under a prior interpretation of the then governing law. We interpret contracts with reference to the circumstances and intent of the parties in place at the time the contract is made. R. Zoppo Co. v. City of Dover, 124 N.H. 666, 671 (1984). We also decline to apply judicial decisions retroactively when doing so can cause harsh results. Lee James Enters. v. Town of Northumberland, 149 N.H. 728, 730 (2003). In this case, however, the plaintiff did not argue that Union Leader Corp. v. Town of Salem should not be applied retroactively or that his bargained-for confidentiality agreement should constitute a factor to be considered in the trial court's balancing of his privacy interests against the public's right to know. For that reason, I concur in the result reached by my colleagues.

---

[4] See also RSA 91-A:4, VI (2023) ("Every agreement to settle a lawsuit against a governmental unit, threatened lawsuit, or other claim, entered into by any political subdivision or its insurer, shall be kept on file at the municipal clerk's office and made available for public inspection for a period of no less than 10 years from the date of settlement."); RSA 33-A:3-a (Supp. 2023) (disposition and retention schedule for municipal records, including personnel files and internal affairs investigations).